Eli M. SPARK, Appellant,

v.

The CATHOLIC UNIVERSITY OF AMERICA et al.

No. 74–1336.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 20, 1975.

Decided April 7, 1975.

Edwin Yourman, Washington, D. C., for appellant; Robert Sheriffs Moss & Associates, Washington, D. C., was on the brief, for appellant.

Nicholas D. Ward, Washington, D. C., with whom Stephen A. Trimble, Richard W. Turner and Richard W. Galiher, Washington, D. C., were on the briefs, for appellees.

Before LEVENTHAL,* ROBINSON and MacKINNON, Circuit Judges.

PER CURIAM:

This is an appeal from a summary judgment dismissing a complaint for lack of federal jurisdiction. Appellant Spark was a Professor of Law employed by appellee Catholic University of America, a private institution. The complaint alleged that he engaged in his first amendment rights to protest certain actions of the Dean of the Law School which lowered admission standards and modified course requirements. It was claimed that as a result of his protests he was denied a pay raise of $1,750 granted to all Professors of Law of equal seniority for the school year 1970–71, that he received a pay raise of only $1,250 for 1971–72 while others of the same seniority received $2,000, and that he was forced into retirement at age 65 in 1972 although it was customary to allow continued employment until age 70.

Federal jurisdiction was alleged to lie in the fact that the University receives approximately 25% (about $5,000,000 per year) of its revenues from the Federal Government in the form of (1) Government sponsored instruction and research, (2) grants and payments on contracts for Federal Government sponsored programs, (3) scholarships for students attending the University, and (4) student aid. The amended complaint asserted that "the United States of America . . . has by reason thereof become so involved in the conduct of the University that its activities are also those of the Federal Government and are performed under the aegis of the Federal Government." (J.A. 91.) This supposedly converted the University into a quasi-public agency and subjected its personnel decisions to the requirements of the first and fifth amendments.

In response to the University's motion for summary judgment, the District Court dismissed the complaint for lack of federal jurisdiction, without holding a hearing on the motion. In support of its motion for summary judgment, the University, by affidavit of C. Joseph Nuesse, Executive Vice-President and Provost, admitted that the Government funds various programs but denied that it exercises any control over curriculum or personnel as a result of this funding. (J.A. 126–27.) The court in its order dismissing the amended complaint with prejudice specifically found that "the

---

* Circuit Judge LEVENTHAL did not participate in the decision of this case.

Catholic University of America is a private institution of higher learning over which the Federal Government exercises no direction, supervision or control with respect to its curriculum, program of instruction, administration or personnel and that said Catholic University is not an arm of the United States Government . . . ." (J.A. 150–51.) Appellant's motion for reconsideration was denied and this appeal followed.

Appellant argues that the trial court was required to afford him an oral hearing before ruling on the motion for summary judgment and that his complaint alleged a "federal question" sufficient to confer subject matter jurisdiction under 28 U.S.C. § 1331(a).

1. *Need for a Prior Hearing*: In acting on the motion for summary judgment without affording appellant a hearing and the opportunity to present oral argument, the court relied on D.C. District Court Rule 1–9(e)[1] which places the decision to allow an oral hearing in the sole discretion of the court. Appellant argues that this procedure violates Rule 56(c), Fed.R.Civ.P., which provides that a motion for summary judgment "shall be served at least 10 days before the time fixed for the hearing." However, Rule 78 provides:

> To expedite its business, the court may make provision by rule or order for the submission and determination of motions without oral hearing upon brief written statements of reasons in support and opposition.

and Rule 83 provides:

> Each district court by action of a majority of the judges thereof may from time to time make and amend rules

governing its practice not inconsistent with these rules.

■■■ While it is clear that due process does not include the right to oral argument on a motion, see e. g., Morrow v. Topping, 437 F.2d 1155 (9th Cir. 1971), there is a division of authority among the circuits on the issue of whether a motion for summary judgment may ever be granted without affording a hearing to the adverse party. The Fifth and Ninth Circuits have held that a hearing is required[2]; the Fourth, Seventh, Eighth and Tenth Circuits have held that oral argument may be avoided in appropriate circumstances,[3] although some of these latter decisions indicate that a hearing should be held in most instances. We believe that the decisions permitting the trial court to dispense with oral argument state the sounder rule of law.

■■■ We find that the denial of the oral hearing was proper in this case. Appellant was given an ample opportunity to demonstrate subject matter jurisdiction through his affidavits in opposition to summary judgment. Furthermore, he was allowed to amend his complaint one time before it was dismissed. No showing has been made that an oral hearing would have produced any further evidence to enable the District Court to find federal jurisdiction. We therefore adopt the construction of the Rules which permits the District Court to dispense with oral arguments in appropriate circumstances in the interest of judicial economy, find that this case presented such circumstances and accordingly affirm that aspect of the District Court's decision.

---

1. D.C. District Court Rule 1–9(e) provides:

A party may in his motion or his opposition specifically request an oral hearing, but the allowance of an oral hearing shall be within the sole discretion of the court.

2. Georgia Southern & F. Ry. Co. v. Atlantic Coast Line R. Co., 373 F.2d 493, 496–98 (5th Cir.), cert. denied, 389 U.S. 851, 88 S.Ct. 69, 19 L.Ed.2d 120 (1967); Dredge Corp. v. Penny, 338 F.2d 456, 461–62 (9th Cir. 1964).

3. Parish v. Howard, 459 F.2d 616 (8th Cir. 1972); Hazen v. Southern Hills Nat'l Bank, 414 F.2d 778, 780 (10th Cir. 1969); United States Fidelity & Guaranty Co. v. Lawrenson, 334 F.2d 464, 466–67 (4th Cir.), cert. denied, 379 U.S. 869, 85 S.Ct. 141, 13 L.Ed.2d 71 (1964); Sarelas v. Porikos, 320 F.2d 827 (7th Cir. 1963), cert. denied, 375 U.S. 985, 84 S.Ct. 519, 11 L.Ed.2d 473 (1964). *See also* Seasonall Industries, Inc. v. Turkiye, etc., 425 F.2d 34 (3d Cir. 1970).

■ 2. *Federal Jurisdiction*: In his opposition to the motion for summary judgment, appellant argued that he had raised two genuine issues of material fact: (1) Whether the Government furnishes substantial sums of money to the University, and (2) Whether as a result of this financial assistance the Government has become so involved in the conduct of the University that its activities have become governmental action. Regarding the first issue, the University did not contradict appellant's description of the types and amounts of funds it received from the Government. However, its affidavit did assert that the Government does not exercise any direction, supervision or control over its curriculum, program of instruction, administration or personnel. ·(J.A. 127). Appellant did not contradict the accuracy of that statement ·by alleging any examples of Government control but merely continued to assert that the Government had become involved in the conduct of the University "by reason of its financial assistance." (J.A. 148.) Furthermore, his statement of genuine issues (J.A. 149–50) only referred to Government involvement in terms of federal funding. Thus the extent of the governmental involvement was no longer in dispute.

■ Appellant's second "issue" is the legal question of whether the receipt of federal funds to the extent shown in the affidavits converts a private institution into an agency of the Government sufficient to establish federal question jurisdiction. Such an issue of law should be no barrier to a summary judgment. Appellant's contention that summary judgment can not be used to resolve a dispute over the existence of a federal question is simply erroneous. The decision of the District Court was merely a determination that the allegations in the complaint and the uncontroverted affidavits were legally not sufficient to establish federal jurisdiction. The need to "sift facts and weigh circumstances" to determine "State involvement" described in Burton v. Wilmington Parking Authority, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1969), was satisfied in this case by an analysis of the extent of the federal involvement as set out in the complaint and the affidavits.

■ The only remaining question is the validity of the District Court's finding that it did not have jurisdiction over the complaint because the Government exercises no control over the University's activities. Each party cites numerous cases dealing with the amount of governmental involvement which is necessary before a private entity becomes sufficiently entangled with governmental functions that federal jurisdiction attaches.[4] If any principle emerges from these cases, it would appear to be that, at least where the question of race is not

---

4. *Cf.* Jackson v. Metropolitan Edison Co., 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d. 477 (1974) (regulated utility); Moose Lodge No. 107 v. Irvis, 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972) (state liquor license); Wahba v. New York University, 492 F.2d 96 (2d Cir.), cert. denied, 419 U.S. 874, 95 S.Ct. 135, 42 L.Ed.2d 113 (1974) (private university receiving research grants); Junior Chamber of Commerce of Rochester, Inc. v. United States Jaycees, 495 F.2d 883 (10th Cir.), cert. denied, 419 U.S. 1026, 95 S.Ct. 505, 42 L.Ed.2d 301 (1974) (private organization receiving federal funds); Blackburn v. Fisk University, 443 F.2d 121 (6th Cir. 1971) (state chartered private university); and Grossner v. Trustees of Columbia University, 287 F.Supp. 585 (S.D.N.Y.1968) (state funding of private university), all finding insufficient governmental involvement, *with* Burton v. Wilmington Parking Authority, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961) (restaurant leased from government-owned parking facility); Sams v. Ohio Valley General Hospital Assn., 413 F.2d 826 (4th Cir. 1969) (private hospitals); Powe v. Miles, 407 F.2d 73 (2d Cir. 1968); Hammond v. University of Tampa, 444 F.2d 951 (5th Cir. 1965) (private university using municipal property); Simkin v. Moses H. Cone Memorial Hospital, 323 F.2d 959 (4th Cir. 1963) (private hospital receiving Hill-Burton funds); and Kerr v. Enoch Pratt Free Library, 149 F.2d 212 (4th Cir.), cert. denied, 326 U.S. 721, 66 S.Ct. 26, 90 L.Ed. 427 (1945) (privately endowed library), each finding that federal jurisdiction existed.

involved,[5] it is necessary to show that the Government exercises some form of control over the actions of the private party. In the present case, the statutes under which the University received the funds[6] specifically prohibit the Federal Government and its agents from exercising any supervision or control over or participating in the activities of the University. Appellant neither alleged that the Government was not complying with these statutes nor claimed that any connection existed between the funding activities of the Government and the various decisions by University officials concerning his employment status.

 The fact that the Federal Government contributes funds to the University, by itself, is insufficient to show the exercise of influence on University decision-making or the encouragement of specific policies. In Grossner v. Columbia University, 287 F.Supp. 535 (S.D.N.Y.1968), the court responded to a similar situation as follows:

A more fundamental point against plaintiffs is that receipt of money from the State is not, without a good deal more, enough to make the recipi-

ent an agency or instrumentality of the Government. Otherwise, all kinds of contractors and enterprises, increasingly dependent upon government business for much larger proportions of income than those here in question, would find themselves charged with "state action" in the performance of all kinds of functions we still consider and treat as essentially "private" for all presently relevant purposes. See Simkins v. Moses H. Cone Memorial Hospital, supra, 323 F.2d [959] at 967 (4th Cir. 1963), cert. denied, 376 U.S. 938, 84 S.Ct. 793, 11 L.Ed.2d 659 (1964).

287 F.Supp. at 547–48. Although *Grossner* dealt with the use of state funds by a private university, its language is equally applicable to the instant case. It has also been held that governmental penetration into the affairs of a private university sufficient to establish federal jurisdiction will not arise from government chartering,[7] from the granting of tax exempt status,[8] or from the requirement that the university comply with federal anti-discrimination statutes as a condition for receiving the funds.[9] Since

---

5. *See* Bright v. Isenbarger, 314 F.Supp. 1382, 1392–94 (N.D.Ind.1970), aff'd, 445 F.2d 412 (7th Cir. 1971); Coleman v. Wagner College, 429 F.2d 1120, 1127 (2d Cir. 1970) (Friendly, J., concurring).

6. 20 U.S.C. § 1232a provides:

§ 1232a. *Prohibition against Federal control of education.*

No provision of the Act of September 30, 1950, Public Law 874, Eighty-first Congress; the National Defense Education Act of 1958; the Act of September 23, 1950, Public Law 815, Eighty-first Congress; the Higher Education Facilities Act of 1963; the Elementary and Secondary Education Act of 1965; the Higher Education Act of 1965; the International Education Act of 1966; or the Vocational Education Act of 1963 shall be construed to authorize any department, agency, officer, or employee of the United States to exercise any direction, supervision, or control over the curriculum, program of instruction, administration, or personnel of any educational institution, school, or school system, or over the selection of library resources, textbooks, or other printed or published instructional materials by any educational institution or school

system, or to require the assignment or transportation of students or teachers in order to overcome racial imbalance. (Pub.L. 90–247, title IV, § 422, as added Pub.L. 91–230, title IV, § 401(a)(10), Apr. 13, 1970, 84 Stat. 169.)

This statute superseded 20 U.S.C. §§ 402, 757 and 1144 which contained similar restrictions.

7. Blackburn v. Fisk University, 443 F.2d 121 (6th Cir. 1971).

8. Browns v. Mitchell, 409 F.2d 593 (10th Cir. 1969).

9. Wahba v. New York University, 492 F.2d 96 (2d Cir.), cert. denied, 419 U.S. 874, 95 S.Ct. 135, 42 L.Ed.2d 113 (1974):

Congress has specified one constitutional command, a prohibition of racial discrimination, which those engaging in federally financed projects must respect. This very specification affords some indication that the Government did not mean to require compliance with other constitutional guarantees; we do not think the Constitution imposes them *proprio vigore.*

492 F.2d at 102.

appellant did not allege any additional federal involvement in the affairs of Catholic University beyond the contribution of federal funds, we conclude that federal jurisdiction does not exist in this case.

We also note that appellant is contemporaneously pursuing a contract action in the Superior Court for the District of Columbia. While we have not relied upon that fact in the disposition of the instant appeal, it appears that appellant is not without a forum for his claims.

The order of the District Court dismissing with prejudice appellant's Amended Complaint for lack of federal question jurisdiction is accordingly

Affirmed.