Margarita **BERRIOS**, Plaintiff,

v.

**INTER AMERICAN UNIVERSITY**
et al., Defendants.

Civ. No. 74–590.

United States District Court,
D. Puerto Rico.

July 22, 1975.

Appeal Dismissed June 16, 1976.
See 96 S.Ct. 2665.

Luis Amauri Suárez, Puerto Rico Legal Services, Inc., Hato Rey, P.R., for plaintiff.

William Estrella, San Juan, P.R., for defendants.

Before COFFIN, Circuit Judge, and TOLEDO and PESQUERA, District Judges.

## OPINION

COFFIN, Circuit Judge.

As a result of activities during a student strike, plaintiff, a student at Inter American University (hereinafter "the University"), was suspended on May 7, 1974. She filed this action on May 20, 1974, seeking a declaratory judgment and injunctive relief under 42 U.S.C. § 1983.[1] She alleges violations of her rights under the First, Fifth, and Fourteenth Amendments. Defendants have moved to dismiss the complaint for lack of jurisdiction.[2]

Section 1983 and its jurisdictional counterpart, 28 U.S.C. § 1343, establish a right of action in federal court for redress from the deprivation of " . . . any rights, privileges, or immunities secured by the Constitution and laws", 42 U.S.C. § 1983, if that deprivation is the result of action under color of state law. The limitation of the relief provided by § 1983 to deprivations under color of state law represents a fundamental delineation of the class of disputes which society wishes to have judicially determined under the statute. *Civil Rights Cases*, 109 U.S. 3, 11, 3 S.Ct. 18, 21, 27 L.Ed. 835, 839 (1883). But while the underlying policy that governmental rather than private action be subject to scrutiny under § 1983 appears uncomplicated, the increasing extent and variety of governmental involvement in, support for and regulation of purportedly private activities had made application of the policy a delicate task. Some indicia of government involvement seem to be present in almost every socially significant institution or activity. To decide whether sufficient governmental involvement exists to support federal jurisdiction under § 1983 we must "sift facts and weigh circumstances". *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1969).

Inter American University has nine campuses with an enrollment of approximately 16,000, which constitutes 15 per cent of the total student enrollment in institutions of higher education, public or private, in Puerto Rico. The University is accredited by the Council on Higher Education (hereinafter "CHE"), the body vested with responsibility for accreditation under Puerto Rican law. 18 L.P.R.A. § 602. The CHE is advised in its accreditation function by a Permanent Advisory Committee composed of the presidents of all accredited institutions of higher education in Puerto Rico and the president of the University of Puerto Rico. The CHE has adopted a set of regulations detailing its procedures and requirements relating to accreditation which provide in part that "[r]egulations should specify the rights and duties of students and the basic principles that will govern student life. These regulations should be made known to all students." Regulations Concerning the Accreditation of Private Institutions of Higher Education in Puerto Rico, § 4, art. 4.

During the 1973–74 academic year the University received approximately 12.5 per cent of its budget from the Commonwealth government in the form of aid to students applied directly toward the payment of tuition and fees.[3] The University is required to file bi-annual reports with the CHE relating to its utilization of student aid funds received

---

1. Plaintiff originally sought relief under 42 U.S.C. §§ 1981 and 1985 as well, but subsequently stipulated that she would proceed only on her claim under § 1983.

2. Because the University has campuses throughout Puerto Rico a three-judge court was convened pursuant to 28 U.S.C. §§ 2283 and 2284.

3. A much larger proportion of the University's budget comes from the federal government under a variety of programs. This aid, however, is not relevant to the presence or absence of state action under § 1983.

from the Commonwealth. Additional financial assistance is received in the form of tax exemptions, including a property tax exemption twenty times larger for institutions of higher education than for other tax exempt entities. 13 L.P.R.A. § 551(e).

Plaintiff argues that this pattern of regulation and support, considered in light of Article II, § 5 of the Puerto Rico Constitution which provides that "every person has a right to an education" evinces a governmental design for private execution of public functions, thus establishing the presence of state action under *Nixon v. Condon*, 286 U.S. 73, 52 S.Ct. 484, 76 L.Ed. 984 (1931); *Marsh v. Alabama*, 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946); and *Evans v. Newton*, 382 U.S. 296, 86 S.Ct. 486, 15 L.Ed.2d 373 (1966). Plaintiff also contends that the evidence of governmental involvement in the affairs of the University is such as to suggest that, at least as to student discipline, the actions of the University are state action. *See Burton v. Wilmington Parking Authority, supra.* Although in the end we must determine whether the aggregate of facts indicating governmental involvement support our jurisdiction of this case, we begin with an analysis of the constituent elements.

■ The financial assistance provided to the University through tax exemptions and student aid, while indicating that the Commonwealth wishes to foster higher education, does not, without more, render the actions of the University state action for the purposes of § 1983. *Grossner v. Trustees of Columbia University*, 287 F.Supp. 535 (S.D.N.Y. 1968); *Spark v. Catholic University of America*, 167 U.S.App.D.C. 56, 510 F.2d 1277 (1975); *Powe v. Miles*, 407 F.2d 73 (2d Cir. 1968); *Blackburn v. Fisk University*, 443 F.2d 121 (6th Cir. 1971);

*Browns v. Mitchell*, 409 F.2d 593 (10th Cir. 1969).

■ Nor do we think that the Commonwealth's regulation of the University through the CHE so involves it in University disciplinary procedures as to make those procedures subject to constitutional scrutiny by way of § 1983. The only connection between the Commonwealth and the University's disciplinary rules is the CHE's requirement that each institution by regulation establish and make known the rights and responsibilities of students. This is far less than the New York Legislature's command that colleges adopt "rules and regulations for the maintenance of public order" on their campuses which was considered by the Second Circuit in *Coleman v. Wagner*, 429 F.2d 1120 (2d Cir. 1970). There the court concluded that if on remand plaintiffs could prove that the statutory requirement was used or intended "to coerce colleges to adopt disciplinary codes embodying a 'hard-line' attitude toward student protestors", 429 F.2d at 1125, then the hand of the state would be shown to be manipulating the policies of the colleges, and state action would be present.[4]

The CHE regulation does not trench upon the University's discretion to follow whatever policy it wishes, but requires only that some general policy be publicly adopted. The Supreme Court in *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972), and *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477, 43 U.S.L.W. 4110 (1974), held that extensive state regulation does not alone operate to make the entity regulated subject to § 1983. " . . . [T]he inquiry must be whether there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself."

---

**4.** Judge Friendly, concurring, 429 F.2d at 1126–27, suggests that the circumstances of New York's adoption of the public order rule requirement—an action taken in response to extensive and often destructive campus pro-

tests—themselves demonstrate the intent of the Legislature to take a role in quelling disruption on private campuses, thus establishing state action. There is no evidence of such circumstances here.

419 U.S. at 351, 95 S.Ct. at 453, 42 L.Ed.2d at 484, 43 U.S.L.W. at 4112. Here there is little to indicate that CHE regulations influenced University disciplinary policies.

■ While neither the Commonwealth's aid to, nor its regulation of the University suffices to make the University's suspension of the plaintiff state action, the question remains whether taken in conjunction all the indicia of governmental involvement with the University evidence such a degree of interdependence that the actions of the latter must be treated as actions of the former for constitutional purposes. We think not. The policy followed by the Commonwealth appears to be one of enabling its citizens to obtain higher education of at least acceptable quality while permitting great diversity among the institutions accredited to provide such education. The circuit courts have been consistent in their refusal to characterize publicly assisted and regulated private institutions of higher education as state actors. *Powe v. Miles, supra; Grafton v. Brooklyn Law School*, 478 F.2d 1137 (2d Cir. 1973); *Spark v. Catholic University of America, supra; Greenya v. George Washington University*, 167 U.S.App. D.C. 379, 512 F.2d 556 (1975); *Blackburn v. Fisk University, supra; Browns v. Mitchell, supra.*[5]

■ There remains only the contention that the Commonwealth's education policies amount to the delegation of a public function to private entities which because of the role which they are fulfilling are subject as surrogates of the state to § 1983. Several district courts have held private universities amenable to jurisdiction under § 1983 as fulfilling a public function. *Guillory v. Administrators of Tulane University of Louisiana*, 203 F.Supp. 855 (E.D.La.1962); *Belk v. Chancellor of Washington University*, 336 F.Supp. 45 (E.D.Mo.1970). But the Supreme Court has, in dicta, rejected the public function theory as applied to education. *Evans v. Newton*, 382 U.S. 296, 300, 86 S.Ct. 486, 489, 15 L.Ed.2d 373, 377 (1966); *Jackson v. Metropolitan Edison Co., supra*, 419 U.S. at 354 n. 9, 95 S.Ct. at 455, 42 L.Ed.2d at 486, 43 U.S. L.W. at 4113 n. 9. We do not think the general statement in the Puerto Rico Constitution that each person has "a right to an education" is enough to make higher education a uniquely public function in Puerto Rico.

■ The University's actions not having been "under color of any statute, ordinance, regulation, custom, or usage of any State or Territory", we have no jurisdiction to adjudicate plaintiff's claims. Should she wish to appeal this decision it is our view that under *MTM, Inc. v. Baxley*, 420 U.S. 799, 95 S.Ct. 1278, 43 L.Ed.2d 636, 43 U.S.L.W. 4442 (1975), plaintiff should appeal to the circuit court, but we are not without doubt as to the proper course to be pursued, and we think plaintiff would be well advised to file a protective appeal with the Supreme Court. Because of our determination of the state action question we

---

**5.** The First Circuit has not yet had occasion to rule on a claim that the actions of a private university constitute state action for the purposes of § 1983. In *McQueen v. Druker*, 438 F.2d 781 (1st Cir. 1971), the Court of Appeals found state action in an eviction from subsidized housing. In *Lavoie v. Bigwood*, 457 F.2d 7 (1st Cir. 1972), the court found state action in an eviction from a trailer park effectively granted a monopoly by local zoning and licensing policies. In *Fletcher v. Rhode Island Hospital Trust National Bank*, 496 F.2d 927 (1st Cir. 1974), the court found no state action in a bank's set-off of its client's checking account balance against her credit card debt.

In *Davis v. Richmond*, 512 F.2d 201 (1st Cir. 1975), the court found no state action in a landlord's self-help distraint of his roomer's property under the Massachusetts Boardinghouse Lien Statute. In *Fortin v. Darlington Little League, Inc.*, 514 F.2d 344 (1st Cir. 1975), the court found state action in a local little league's exclusion of girls where the municipal government had constructed baseball diamonds to league specifications, and the league had exclusive access to them at peak hours. We do not find in these cases a consistent line of analysis pertinent to the present case.

need not and do not decide whether, were state action present, the University's disciplinary rules would be rules of statewide application for purposes of 28 U.S.C. § 2281. Should the Court of Appeals conclude that we are in error in concluding that no direct appeal of this decision to the Supreme Court would lie under 28 U.S.C. § 1253, they may wish to remand the case to us for resolution of the question of statewide application.