**Duane HUFF, p.p.a. Millicent Huff**

v.

**NOTRE DAME HIGH SCHOOL OF WEST HAVEN.**

Civ. No. N–78–305.

United States District Court,
D. Connecticut.

Sept. 26, 1978.

Eugene A. Skowronski, Seymour, Conn., for plaintiff.

Joseph H. Pellegrino, New Haven, Conn., for defendant.

## MEMORANDUM OF DECISION

BURNS, District Judge.

This case concerns whether the receipt of governmental aid and the imposition of state regulations converts a private secondary school into an agency of the state to establish federal jurisdiction under 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3).[1] For reasons set forth below, this court concludes that there is no state action present here and hence no federal jurisdiction.

Plaintiff Duane Huff is a fifteen-year-old boy; plaintiff Millicent Huff is Duane's mother and guardian. The defendant, Notre Dame High School of West Haven (Notre Dame), is a private high school operated by the Brothers of the Order of the Holy Cross, and is accredited by the Connecticut State Department of Education. During his sophomore year at Notre Dame, Duane developed academic and disciplinary problems. At the termination of the school year in June, 1978, the Board of Discipline of Notre Dame voted to expel Duane for disciplinary reasons. Duane did not attend this meeting, nor did his mother or an attorney.[2]

---

1. 42 U.S.C. § 1983 reads in full:

   Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

   28 U.S.C. § 1343 reads in pertinent part:

   The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

   . . . . .

   (3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States . . . .

2. By agreement of counsel, the hearing before the court was confined to the question of Sec-

In August, 1978, the Board of Discipline convened to reconsider Duane's expulsion. This time, Duane was allowed to attend the meeting, but without the assistance of his mother or counsel.[3] The board voted to affirm its earlier decision. Plaintiffs alleged that this procedure denieu Duane his procedural due process rights under the fourteenth amendment, and seek a temporary restraining order reinstating Duane.

■ Ninety-five years ago, the United States Supreme Court declared that the relief provided by 42 U.S.C. § 1983 applies to official state action only. *The Civil Rights Cases,* 109 U.S. 3, 11, 3 S.Ct. 18, 27 L.Ed. 835 (1883). However, the Court in recent years has broadened the application of § 1983 to actions by private entities under a variety of circumstances. There are three dominant theories by which private activity can be deemed "state action" for federal jurisdictional and constitutional purposes: the "state entanglement" theory, the "state function" theory, and the "state likeness" theory. Plaintiff has asked this court to apply one, or both, of the first two theories.[4]

■ The "state entanglement" theory provides that "state action" is present when the state is entangled with the operations of a private enterprise. As the Court explained, a district court must "sift facts" and "weigh circumstances" in order to determine if there is sufficient state involvement. *Burton v. Wilmington Parking Authority,* 365 U.S. 715, 722, 81 S.Ct. 856, 6 L.Ed.2d 45 (1969). State regulation alone is not enough. *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974) (termination of a customer's electric service by a public utility company, which is subject to extensive state regulation, nevertheless cannot be deemed "state action" for due process purposes); *Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972) (discriminatory membership practices by a private social club is not "state action," despite the club's holding of a state liquor license).

Plaintiffs have taken a two-prong approach to the "state entanglement" theory: (1) that the receipt of aid from the United States, the state of Connecticut, and the town of West Haven is sufficient entanglement to justify state action, and (2) that the regulation of Notre Dame by state and local officials constitutes state action.

Plaintiffs present as evidence the amount of money received by Notre Dame from the Federal government, the state and the town for the school year 1977–1978. This revenue includes: In kind services for aid to disadvantaged children pursuant to Conn. Gen.Stat. § 10–266a *et seq.,* in the amount of $1,779.00; in kind services of a school social worker, school nurse, school psychologist, and speech and hearing therapist, in the amount of $8,400.00; library books and audio-visual equipment with a fair market value of $964.00; and payment by the state for the bus transportation of certain students, in the amount of $11,700.00. Defendant disputes the inclusion of the last amount since the funds are paid directly to the bus companies. Not including the last figure, the total amount is $11,143; including it, the amount is $22,843.[5] Defendant submitted evidence indicating that the total

---

tion 1983 jurisdiction. Therefore, it remains unclear from the record whether Duane even asked that his mother or counsel be present, and if so, whether this request was denied.

**3.** Again, there is no evidence whether Duane asked to be permitted such assistance. *See* note 2, *supra.*

**4.** There is a serious question as to the continuing viability of the third theory, "state likeness," under which a private industry is considered to be the state, when such industry behaves like the state with respect to the individual involved. *See Marsh v. Alabama,* 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946); *Food Employees Local 590 v. Logan Valley,* 391 U.S. 308, 88 S.Ct. 1601, 20 L.Ed.2d 603 (1968); *Lloyd v. Tanner,* 407 U.S. 551, 92 S.Ct. 2219, 33 L.Ed.2d 131 (1972); *Hudgens v. NLRB,* 424 U.S. 507, 96 S.Ct. 1029, 47 L.Ed.2d 196 (1976).

**5.** The court will refrain from deciding whether or not this figure is to be included since the amount of governmental aid is not significant when compared with Notre Dame's total budget.

expenses for Notre Dame in 1977–78 were $1,433,343.12. Thus, governmental aid[6] constitutes either .78% or 1.59% of Notre Dame's budget.

■ The federal judiciary is nearly unanimous in holding that financial assistance to a private university or professional school, without more, does not render the actions of the educational institution state action for purposes of § 1983. See *Williams v. Howard University*, 174 U.S.App.D.C. 85, 528 F.2d 658, *cert. denied*, 429 U.S. 850, 97 S.Ct. 138, 50 L.Ed.2d 123 (1976); *Spark v. Catholic University of America*, 167 U.S. App.D.C. 56, 510 F.2d 1277 (1975); *Blouin v. Loyola University*, 506 F.2d 20 (5th Cir. 1975); *Wahba v. New York University*, 492 F.2d 96 (2d Cir.), *cert. denied*, 419 U.S. 874, 95 S.Ct. 135, 42 L.Ed.2d 113 (1974); *Grafton v. Brooklyn Law School*, 478 F.2d 1137 (2d Cir. 1973); *Powe v. Miles*, 407 F.2d 73 (2d Cir. 1968); *Berrios v. Inter American University*, 409 F.Supp. 769 (D.P.R.), *appeal dismissed*, 426 U.S. 942, 96 S.Ct. 2665, 49 L.Ed.2d 1180 (1975); *Grossner v. Trustees of Columbia University*, 287 F.Supp. 535 (S.D.N.Y.1968). In several of these cases, the governmental contribution was quite substantial. For example, in *Spark, supra*, federal aid constituted 25% of the school's budget; in *Grossner, supra*, public funds contributed to 40% of Columbia's total revenues. Yet despite the significant input of governmental aid, state action was not present. The percentage contribution in the instant case is but a fraction of those indicated above.

■ Plaintiffs also argue that the conferral of tax-exempt status upon Notre Dame amounts to significant state involvement. However, this argument has been rejected uniformly as well. See *Grafton v. Brooklyn Law School, supra*; *Browns v. Mitchell*, 409 F.2d 593 (10th Cir. 1969) (conferral of tax-exempt status on Colorado Seminary's related and non-related income

does not create state action since the state does not "dictate or influence the administration of University affairs," 409 F.2d at 596); *Family Forum v. Archdiocese of Detroit*, 347 F.Supp. 1167 (E.D.Mich.1972); *Grossner v. Trustees of Columbia University, supra*. The plaintiff's invocation of state regulatory administration fails as well. See *Jackson v. Metropolitan Edison Co., supra*; *Moose Lodge No. 107 v. Irvis, supra*. The supervisory capacity of state and local governments does not confer "state action" in educational contexts. See *Grafton v. Brooklyn Law School, supra* (private law school's compliance with requirements of New York State Bar Association for bar examination applicants does not create state action); *Blackburn v. Fisk University*, 443 F.2d 121 (6th Cir. 1971) (granting of a charter by the state to private university is not state action); *Berrios v. Inter American University, supra*; *Family Forum v. Archdiocese of Detroit, supra*. The facts in *Family Forum* are somewhat analogous to those in the instant case in that parents of school children sued a high school operated by the Catholic Church under 42 U.S.C. § 1983 for alleged racial discrimination. The plaintiffs claimed, as here, that Michigan statutes provide for some supervision over private and parochial schools in the state, and thus "state action" was present. The court rejected this contention, stating,

> But in the case before this Court, the state has minimal control over private educational facilities. The state is concerned only with sanitation, qualifications of teachers and minimum course requirements. We do not find this minimal amount of regulation, even when considered in conjunction with the tax exempt status, to be sufficient entanglement to constitute state action. The state is merely exercising a legitimate interest in the education of children.

---

**6.** A subsidiary question arises as to the aid contributed by the federal government, since the plaintiffs claim that *state* not *federal*, action is involved here. This was a factor in denying state action in the *Grossner* case, *infra*, in that

over 80% of the public funds received by Columbia came from the federal rather than the state government. 287 F.Supp. 535, 547 (S.D. N.Y.1968).

347 F.Supp. at 1171. In fact, the "broad statutory scheme" cited by plaintiffs for regulation of private schools under Title 10 of the Connecticut General Statutes is even less extensive than those mentioned in *Family Forum.* The enforcement of zoning, building, health and fire codes is also not determinative, since these codes are applicable to *all* structures, including private homes.

In addition, plaintiffs argue that state action is present under the educational association cases and by virtue of state accreditation. However, associational cases, such as *Buckton v. National Collegiate Athletic Association* (NCAA), 366 F.Supp. 1152 (D.Mass.1973) and accreditation cases, such as *Marjorie Webster Junior College, Inc. v. Middle States Association of Colleges and Secondary Schools, Inc.,* 302 F.Supp. 459 (D.D.C.), *rev'd on other grounds,* 139 U.S.App.D.C. 217, 432 F.2d 650 (1969), *cert. denied,* 400 U.S. 965, 90 S.Ct. 367, 27 L.Ed.2d 384 (1970), are inapposite here. The federal judiciary is again nearly unanimous in holding that the activities of the NCAA, a private association regulating intercollegiate athletics, are "state action" since such a large portion of the organization's membership includes state-sponsored colleges and universities.[7] However, these NCAA cases are distinguishable, in that the defendant there was a private association whose operation was involved intimately with those of public colleges and universities, whereas the defendant here is a private secondary school operating solely on its own accord. Moreover, there is a split of authority whether private associations regulating inter*scholastic,* as opposed to inter*collegiate,* athletics can be deemed "the state" for constitutional claims. *Compare Kelly v. Wisconsin Interscholastic Athletic Association,* 367 F.Supp. 1388 (E.D.Wis. 1974) (prohibition of athletic activity between boys and girls by voluntary interscholastic organization is not state action); *Stock v. Texas Catholic Interscholastic League,* 364 F.Supp. 362 (N.D.Tex.1973) (suspension of high school football player by

voluntary association of private high schools is not state action) with *Brenden v. Independent School District 742,* 477 F.2d 1292 (8th Cir. 1973) (state statutory authorization for public high schools to join voluntary interscholastic athletic association is state action); *Dallam v. Cumberland Valley School District,* 391 F.Supp. 358 (M.D.Pa. 1975) (Pennsylvania Interscholastic Athletic Association (P.I.A.A.) is sufficiently tied to the Pennsylvania education system to constitute state action, citing *Harrisburg School District v. P.I.A.A.,* 453 Pa. 495, 309 A.2d 353 (1973)); *Reed v. Nebraska School Activities Association,* 341 F.Supp. 258 (D.Neb.1972) (extensive control of interscholastic sport's activities by private voluntary school activities association is state action).

Similarly, the accreditation cases are not dispositive. For example, in the *Marjorie Webster* case, *supra,* the court emphasized the close relationship between the defendant accrediting association and the United States Office of Education, and the influential position held by the Middle States Association. 302 F.Supp. at 470. The symbiotic relationship between a private enterprise and state government simply is not present here.

Lastly, plaintiffs present the "state function" theory, the rationale of which is that state action is present when a private individual or group performs a function normally associated with governmental activity. This theory had its genesis in 1953 in *Terry v. Adams,* 345 U.S. 461, 73 S.Ct. 809, 97 L.Ed. 1152 (1953), in which the Court ruled that the Jaybird Democratic Association, a county political organization, was deemed to be "the state" for fifteenth amendment purposes. In 1966, the Court applied this "state function" theory to a racially discriminatory park under private trusteeship in *Evans v. Newton,* 382 U.S. 296, 86 S.Ct. 486, 15 L.Ed.2d 373 (1966). Plaintiffs contend that by providing educational facilities, Notre Dame is in compli-

---

**7.** For a detailed analysis of these NCAA cases, see Comment, *A Student-Athlete's Interest in*

*Eligibility: Its Context and Constitutional Dimensions,* 10 Conn.L.Rev. 318, 333–36 (1978).

ance with Article 8, § 1 of the Connecticut Constitution which requires the legislature to establish "free public elementary and secondary schools in the state." See *Horton v. Meskill,* 172 Conn. 615, 376 A.2d 359 (1977). However, such an argument has been rejected by the federal judiciary. *See Blackburn v. Fisk University, supra; Berrios v. Inter American University, supra; Story v. Tate, supra; Grossner v. Trustees of Columbia University, supra. Berrios, supra,* involved a student who had been suspended following a student strike at Inter American University, a large private university in Puerto Rico. Like the plaintiffs in the instant case, Ms. Berrios argued that the university was performing a public function since Article II, § 5 of the Puerto Rico Constitution provides that "every person has the right to an education." The court dismissed this contention: "We do not think the general statement in the Puerto Rico Constitution that each person has 'a right to an education' is enough to make higher education a uniquely public function in Puerto Rico." 409 F.Supp. at 772. The *Grossner* opinion alluded to the significant first amendment establishment clause problems which might develop if a church-sponsored private school, such as Notre Dame, were deemed to be the state; District Judge Frankel observed that plaintiffs' allegations applied equally to the University of Notre Dame or Yeshiva University as to Columbia, noting that if all private schools were "the state," the difficult problem of aid to parochial schools would not exist. 287 F.Supp. at 549 & n. 19.

Therefore, even in the totality of the extant circumstances here there is no state action upon which 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3) jurisdiction can be based and plaintiff's action is dismissed accordingly.

SO ORDERED.