586 F.2d 59
 Joseph MUSSO, Plaintiff-Appellant,
v.
Raffaele SURIANO, Dean, Loyola University School of
Dentistry, John Madonia, Associate Dean, Loyola
University School of Dentistry, and
Loyola University School of
Dentistry,
Defendants-
Appellees.
Patrick BATT, Plaintiff-Appellant,
v.
MARION HEIGHTS, INC., Sister Lillian Van Domlen, Sister
Rosalie Klein, Sister M. Mel O'Dowd, Sister Angiola
Stickelmaier, Sister Peyton Ryan, Delores Gencuski, Mrs. A.
Boehm, John Conway, Robert Hackett, Gerald Falci, and Roger
N. Hamilton, Defendants-Appellees.
Stephen J. KAVKA, M. D., Plaintiff-Appellant,
v.
EDGEWATER HOSPITAL, INC., Defendant-Appellee.
 Nos. 78-1216, 78-1248 and 78-1302.
 United States Court of Appeals,
Seventh Circuit.
 Argued Sept. 15, 1978.
Decided Nov. 2, 1978.
 
 David L. Walther, Milwaukee, Wis., Ralph E. Brown, Patrick T. Murphy, Chicago, Ill., for plaintiffs-appellants.
 Bruce C. O'Neill, Milwaukee, Wis., William J. Campbell, Leon S. Conlon, Chicago, Ill., for defendants-appellees.
 Before SPRECHER, Circuit Judge, NICHOLS, Judge,* and BAUER, Circuit Judge.
 SPRECHER, Circuit Judge.
 
 
 1
 These three cases have been consolidated for opinion on the recurring issue of when the actions of a private entity can properly be characterized as occurring "under color of state law" allowing maintenance of an action under 42 U.S.C. § 1983.
 
 
 2
 * In all three cases, the district court granted defendant's motions to dismiss the complaints for lack of subject matter jurisdiction. In each case the district court held that there were insufficient allegations of state or federal action.[1]
 
 
 3
 In Batt v. Marion Heights, Inc., plaintiff Patrick Batt brought suit for damages against the defendant nursing home, its Board of Directors and an individual serving as administrator of the facility. Batt had been employed by Marion Heights as personnel director. On May 6, 1977, Batt was discharged, allegedly for the sole reason that he was a homosexual. Batt claims his dismissal on this ground deprived him freedom of speech and association, his right to privacy, due process, and equal protection in violation of the First, Fourth, Fifth, Ninth and Fourteenth Amendments to the United States Constitution. In support of his charge that he was terminated "under color of state law," Batt relies principally on two factors: 1) Marion Heights receives extensive state and federal funding under Medicare and Medicaid as well as through specific governmental programs; and 2) Marion Heights is regulated and licensed by the State of Wisconsin. Plaintiff does not allege that this funding or regulation encouraged or required the defendants' decision to discharge homosexual employees.
 
 
 4
 In Kavka v. Edgewater Hospital, Inc., Dr. Stephen Kavka alleges that the hospital acted under color of state law in suspending him from the hospital staff for failure to self-insure against malpractice. This dismissal was alleged to be in violation of his rights to due process and equal protection secured by the Fifth and Fourteenth Amendments. State action, as formulated in the complaint, is supported by allegations of substantial state and federal funding to the defendant under Medicare, Medicaid, and the Hill Burton Act. Dr. Kavka does not allege any relation between the governmental funding and the hospital rule requiring staff physicians to maintain malpractice insurance. In plaintiff's memorandum in opposition to the defendants' motion to dismiss, and in his brief to this court, plaintiff expands the allegations of his complaint. He alleges that the State of Illinois in addition has undertaken to regulate the field of malpractice and has prohibited hospitals from using exculpatory clauses. Furthermore, he argues that the federal and state governments, in the course of regulating participants eligible for Medicare and Medicaid programs, have effectively approved the use of the insurance requirement imposed by Edgewater.[2] But again, the plaintiff fails to demonstrate any relation between these actions of the State and the decision of the hospital.
 
 
 5
 In the third case, Musso v. Suriano, a dental student at Loyola University brought an action alleging that he was expelled by the University without a hearing, in violation of due process rights secured him by the Fifth and Fourteenth Amendments to the United States Constitution. It is argued that this expulsion was conducted under color of state law since Loyola receives substantial state and federal funding allegedly fifty percent of its budget. Additionally, it is stated that the Illinois Department of Registration and Education monitors the curriculum and graduation requirements of the Dental School. Plaintiff, however, does not allege any impact of governmental funding on Loyola's decision not to provide plaintiff with a pre-expulsion hearing.
 
 II
 
 6
 In two recent cases, Cannon v. University of Chicago, 559 F.2d 1063 (7th Cir. 1976), Cert. granted, --- U.S. ----, 98 S.Ct. 3142, 57 L.Ed.2d 1159 (1978), and Cohen v. Illinois Institute of Technology, 524 F.2d 818 (7th Cir. 1975), Cert. denied, 425 U.S. 943, 96 S.Ct. 1683, 48 L.Ed.2d 187 (1976), this court outlined the elements of "state action" prerequisite to any 42 U.S.C. § 1983 civil rights action.[3] Cohen and Cannon, fairly read, leave no doubt as to the prevailing legal requirements for a section 1983 claim. Nonetheless, actions are still being filed, as represented by the three complaints in issue here, without regard to the dictates of those decisions, necessitating another admonition concerning the allegations essential to establish state action.
 
 
 7
 The plaintiffs in each of these three actions on appeal support their allegation of state (or federal) action primarily through reliance on the distribution of substantial state and federal funds to defendants and the imposition of accompanying regulatory measures.[4]
 
 
 8
 The allegations of governmental funding and general regulation, standing alone, however, cannot support a finding of state action. The courts, including this one, have uniformly dismissed claims of state action grounded merely on governmental funding and regulation where neither has fostered the challenged activities of private health care facilities such as defendants Edgewater Hospital and Marion Heights, Hodge v. Paoli Memorial Hospital, 576 F.2d 563 (3d Cir. 1978); Schlein v. Milford Hospital, Inc., 561 F.2d 427 (2d Cir. 1977); Greco v. Orange Memorial Hospital Corp., 513 F.2d 873 (5th Cir.), Cert. denied, 423 U.S. 1000, 96 S.Ct. 433, 46 L.Ed.2d 376 (1975); Doe v. Bellin Memorial Hospital, 479 F.2d 756 (7th Cir. 1973); Mills v. Fox, 421 F.Supp. 519 (E.D.N.Y.1976) (nursing home); Doyle v. Unicare Health Service, Inc., 399 F.Supp. 69 (N.D.Ill.1975), Aff'd mem., 541 F.2d 283 (7th Cir. 1976) (nursing home), or of educational institutions such as defendant Loyola University. Lamb v. Rantoul, 561 F.2d 409 (1st Cir. 1977); Cannon v. University of Chicago, 559 F.2d 1063 (7th Cir. 1976); Cohen v. Illinois Institute of Technology, 524 F.2d 818 (7th Cir. 1975), Cert. denied, 425 U.S. 943, 96 S.Ct. 1683, 48 L.Ed.2d 187 (1976); Spark v. Catholic University of America, 167 U.S.App.D.C. 56, 510 F.2d 1277 (1975); Sanford v. Howard University, 415 F.Supp. 23 (D.D.C.1976), Aff'd mem., 179 U.S.App.D.C. 128, 549 F.2d 830 (1977).
 
 
 9
 Cannon and Cohen, adhering to Supreme Court decisions in Moose Lodge No. 107 v. Irvis, 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972) and Jackson v. Metropolitan Edison Co., 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974), established that a claim under section 1983 must be based on no less than the state's "affirmative support" of the private conduct challenged. Cannon v. University of Chicago, 559 F.2d at 1069; Cohen v. Illinois Institute of Technology, 524 F.2d at 825-26. The Supreme Court's most recent opinion on state action, Flagg Brothers, Inc. v. Brooks, 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978), leaves open the question whether even "affirmative support" short of compulsion will suffice to render a private act attributable to the state.[5] The question need not be reached here, however, since plaintiffs have not established any degree of state encouragement of the challenged activity. Plaintiffs have not claimed that state regulations encouraged, or that state funds were conditioned upon, defendants' dismissal of homosexual employees, suspension of hospital physicians who refuse to carry malpractice insurance, or denial of hearings to dental students expelled for disciplinary reasons. Plaintiffs have failed to allege any "nexus." Dismissal of the complaints on that ground by the respective district courts was therefore proper.
 
 
 10
 Plaintiffs argue that the level of state support of defendant institutions is so high that they are relieved of the necessity for pleading or proving a nexus, citing our decision in Cohen. We do not suggest that nexus is the exclusive means of establishing state action. Cohen and Cannon held that under certain limited circumstances the plaintiff need not establish a nexus between the state funding and/or regulation and the challenged act. The language of reservation in the cases cannot be extrapolated, as the plaintiffs have done here, however, to support the assertion that a high level of financial support, without more, gives rise to state action. The passage in Cohen cited by plaintiffs states that IIT "is not so heavily dependent on the State as to be considered the equivalent of a public university for all purposes and in all its activities," and then goes on to distinguish in a footnote cases of other courts where financial support was far greater. 524 F.2d at 825 & n.18.
 
 
 11
 The alternative to nexus referred to in Cohen sufficient to sustain a claim of state action is not simply a higher level of state support. Rather, nexus can be avoided only by an allegation of facts suggesting that the ostensibly private entity has acted as a state instrumentality or a "joint participant," in the language of Burton v. Wilmington Park Authority, 365 U.S. 715, 725, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961). Such an allegation is dependent upon more than funding; it is dependent upon facts suggesting control. This interpretation of the Cohen reservation is buttressed by Judge (now Justice) Stevens' citation of Powe v. Miles, 407 F.2d 73 (2d Cir. 1968). Cohen v. Illinois Institute of Technology, 524 F.2d at 825 n.19. In Powe, Judge Friendly found that the state of New York's comprehensive financing and administration of the New York State College of Ceramics allowed a finding of state action. Judge Friendly emphasized however that the State had concrete ability to control all the policies of the college, even though that control had not been specifically exercised in Powe. 407 F.2d at 83. Recent decisions premised on an instrumentality theory of state action support our conclusion here that mere allegations of state funding and general regulation, without some evidence of state administration or practical control, are insufficient. See Chalfant v. Wilmington Institute, 574 F.2d 739 (3d Cir. 1978) (en banc); Downs v. Sawtelle, 574 F.2d 1 (1st Cir. 1978); Braden v. University of Pittsburgh, 552 F.2d 948, 965, 970 (3d Cir. 1977) (concurring opinion); Hollenbaugh v. Carnegie Free Library, 545 F.2d 382 (3d Cir. 1976); Kerr v. Enoch Pratt Free Library, 149 F.2d 212 (4th Cir. 1945). Thus, the complaints in the instant actions cannot be sustained on an instrumentality theory.
 
 
 12
 A third route to state action is also available by depicting the private activity as a public function. Plaintiff Batt relies heavily on this characterization of nursing homes. Whether measured by the test of a "traditionally exclusive state function" forwarded by the four justices writing the opinion for the court in Flagg Brothers, Inc. v. Brooks, 436 U.S. 149, 157, 98 S.Ct. 1729, 1734, 56 L.Ed.2d 185 (1978), or a function "traditionally and historically associated with sovereignty," adopted by the four dissenting justices, 436 U.S. at 171, 98 S.Ct. at 1741, plaintiff's claim must obviously fail.[6] Care of the elderly and infirm has traditionally been a function associated with the family, not with sovereignty.
 
 
 13
 Finally, plaintiffs also challenge the procedural propriety of dismissal based on the insufficiency of the allegations. We are not imposing rigid pleading requirements. Plaintiffs' complaints simply fail to allege any set of facts supporting the conclusion or inference that defendants have either acted as a state instrumentality, performed traditionally exclusive sovereign functions, or been compelled or even encouraged by the state to make the decisions challenged in these suits. Dismissal of the complaints was therefore appropriate. As we stated in Cohen :
 
 
 14
 We agree that plaintiff is entitled to the fullest opportunity to adduce evidence in support of her claim. But she is not entitled to a trial, or even to discovery, merely to find out whether or not there may be a factual basis for a claim which she has not made. Her complaint omits any allegation of state support or approval of the defendants' discriminatory conduct, and the detailed facts set forth in the complaint, even if wholly true and liberally construed in her favor, do not warrant the conclusion that I.I.T. is a public university. It is clear beyond doubt that the claim which she has alleged does not entitle her to relief.
 
 
 15
 524 F.2d at 827.
 
 
 16
 In some cases, extensive discovery and trial will be necessary to adequately determine whether state action existed. See Braden v. University of Pittsburgh, 552 F.2d 948 (3d Cir. 1977); Weise v. Syracuse University, 522 F.2d 397 (2d Cir. 1975). But in cases such as these where plaintiffs' claim that state action, if present, has taken the form of statutes or regulations, it is entirely appropriate to resolve the issue on a motion to dismiss the complaint. The procedure has been affirmed by the Supreme Court in comparable cases. Flagg Brothers, Inc. v. Brooks, 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978); Jackson v. Metropolitan Edison Co., 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974).[7]
 
 
 17
 Furthermore, there is no showing that the plaintiffs in any of the actions requested to amend their complaints or to delay judgment on the motions until discovery had been completed. The judgments are affirmed.[8]
 
 
 18
 AFFIRMED.
 
 
 
 *
 Honorable Philip Nichols, Jr., Associate Judge, United States Court of Claims, is sitting by designation
 
 
 [1]
 Allegations of governmental action are necessary to confer federal jurisdiction under 28 U.S.C. § 1343. See note 8 Infra
 
 
 [2]
 Specifically, plaintiff charges that the Department of Health, Education and Welfare requires hospitals participating in Medicare and Medicaid programs to have an "effective governing body legally responsible for the conduct of the hospital" which has "adopted bylaws in accordance with legal requirements." 20 C.F.R. § 405.1021 (1977). Plaintiff deduces from this that by allowing Edgewater to participate in the programs, the government has concluded that Edgewater's malpractice regulation is necessarily in accord with "legal requirements." Plaintiff did not amend his complaint to reflect this theory of state action. Nevertheless, a remand on the issue is unnecessary since we do not accept plaintiff's construction of the HEW regulation, nor would plaintiff's construction satisfy the elements of state action discussed Infra
 
 
 [3]
 42 U.S.C. § 1983 states:
 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proceeding for redress.
 
 
 [4]
 The central question presented is that of action by particular states. Nonetheless, plaintiffs have also invoked federal action at various points in their argument. Since state and federal action share similar factual prerequisites, we do not afford a separate discussion of the relevant principles. See Cannon v. University of Chicago, 559 F.2d at 1071 n.8. But as we pointed out in Cannon, although state and federal actions must be viewed analogously, federal funding is not relevant to the existence of state action under section 1983. Id
 
 
 [5]
 In Flagg Brothers, four justices voted to affirm the district court judgment that a warehouseman's proposed sale of bailed goods pursuant to a procedure provided in the New York Uniform Commercial Code § 7-210 was not state action. The opinion affirms on the ground that the proposed sale was neither a traditionally exclusive sovereign function nor a sale "compelled" by the state statute. Statutory permission of such a sale was considered insufficient nexus to render the action attributable to the state. The four dissenting justices, although suggesting that statutory authorization rather than compulsion might be sufficient, found state action by characterizing § 7-210 as the delegation of a function traditionally associated with sovereignty. It is also not clear whether actual compulsion would be required by the four affirming justices when the state activity might be characterized as an affirmative act rather than mere "inaction."
 
 
 [6]
 It should be noted that this circuit has used the exclusivity test. See Anastasia v. Cosmopolitan National Bank of Chicago, 527 F.2d 150, 157 (7th Cir. 1975), Cert. denied, 424 U.S. 928, 96 S.Ct. 1143, 47 L.Ed.2d 338 (1976)
 
 
 [7]
 The district court opinion affirmed in Jackson dismissed the complaint finding: "No state official participated in the practice complained of, Nor is it alleged that the state requested or co-operated in the suspension of service." 348 F.Supp. 954, 958 (M.D.Pa.1972) (emphasis added)
 
 
 [8]
 Plaintiff Kavka has requested this court to modify the district court judgment to reflect a dismissal without prejudice. We do not consider such a modification necessary since the order is phrased in jurisdictional terms, and a dismissal for insufficient allegations of state action is ordinarily construed as a dismissal for lack of subject matter jurisdiction in any event. See Flagg Brothers, Inc. v. Brooks, 436 U.S. 149, 153-154, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978); Carter v. Telectron, Inc., 554 F.2d 1369 (5th Cir. 1977); Schlein v. Milford Hospital, Inc., 561 F.2d 427 (2d Cir. 1977); Sparks v. Catholic University of America, 167 U.S.App.D.C. at 60, 510 F.2d at 1281. Fed.R.Civ.P. 41(b) clearly provides that a dismissal for lack of jurisdiction is a dismissal without prejudice. Carter v. Telectron, Inc., 554 F.2d at 1370