Lena COCKRUM et al., Plaintiffs,
v.
Joseph CALIFANO, Jr., Secretary of the
Department of Health, Education and
Welfare, Defendant.

Civ. A. No. 78–1147.

United States District Court,
District of Columbia.

May 31, 1979.

Michael R. Schuster, Legal Counsel for the Elderly, Philip L. Goar, National Senior Citizens Law Center, Laura Macklin, Neighborhood Legal Services Program, Washington, D. C., for plaintiffs.

Nathan Dodell, Asst. U. S. Atty., Washington, D. C., for defendant.

MEMORANDUM

OBERDORFER, District Judge.

## I. Introduction

### A. *Overview*

Lena Cockrum and three others filed this suit on June 26, 1978, challenging delays

which attend the conducting by the Social Security Administration (SSA) of administrative hearings, and the rendering of final decisions for claimants who appeal the denial, reduction or termination of benefits under Title II (Old Age Survivors and Disability Insurance (OASDI)) and Title XVI (Supplemental Security Income (SSI)) of the Social Security Act, 42 U.S.C. §§ 401 *et seq.,* 1381 et seq. (Act). They seek to represent themselves and other individuals within the District of Columbia who, having requested a hearing after an unfavorable decision, have waited 120 days or longer for a final decision from defendant Secretary of Health, Education and Welfare (Secretary).

Plaintiffs' complaint sets forth six causes of action against the Secretary. It alleges violations of 42 U.S.C. 405(b) (with respect to Title II claimants), 42 U.S.C. 1383(c) (with respect to Title XVI), and with respect to all claimants, 42 U.S.C. § 1302, two provisions of the Administrative Procedure Act (APA), 5 U.S.C. §§ 555(b) and 706(1), and the Due Process Clause of the Fifth Amendment. Plaintiffs seek an injunction ordering the Secretary to make final decisions on appeals within 120 days after a hearing is requested, and to pay benefit claims whenever a decision has not been reached within that time. Alternatively, they seek an injunction directing the Secretary to adopt regulations which impose time limits on reaching decisions on appeals. As explained below, they also seek reconsideration of an earlier order denying a motion for a preliminary injunction, and seek a preliminary injunction for both named parties and the class.

In the original complaint and in the new complaints filed with later motions to intervene, plaintiffs allege that they constitute a certifiable class under F.R.Civ.P. 23(b)(1) and (2). On July 6, 1978, plaintiffs moved for certification under 23(b)(2) on behalf of four subclasses of individuals who had suffered delays of 120 days or more in their appeals from the denial, termination or reduction of (1) benefits under Title II, except for claims based on disability; (2) disability benefits under Title II; (3) benefits under Title XVI, except those based on disability; (4) disability benefits under Title XVI.

On July 25, plaintiffs filed an application for a temporary restraining order to require defendant to issue a final decision on the benefit claims of two named plaintiffs Lena Cockrum and Lottie Young. The Court denied the TRO on July 27, based on representations that government counsel would undertake certain efforts to secure prompt resolution of Young's claim and on the understanding that if such efforts were unsuccessful the issues would be reconsidered in ruling on the motion for preliminary injunction. That latter motion was denied on August 23, based on evidence that the case had been mooted as to those named plaintiffs. The Court also noted, however, in a memorandum accompanying the order denying plaintiffs' motion, that its conclusion that the named plaintiffs would not benefit from a preliminary injunction did not necessarily require dismissal of the action, citing *Sosna v. Iowa,* 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975) for the proposition that in some cases certification of the class may be held to relate back to the time the suit was filed "depend[ing] upon the circumstances . . . and especially the reality of the claim that otherwise the issue would evade review." *Id.* at 402, n. 11, 95 S.Ct. at 559. Subsequently the parties have strongly contested some of the representations which formed the basis for that preliminary decision, but in light of the Court's resolution of the issues in this case it will be unnecessary to return to that problem. A motion for intervention on behalf of Annie Pearl David, Esther Starkey and Michael L. Wasilow was filed on September 26, 1978. A second motion for intervention was filed on January 30, 1979 on behalf of Azzie Lee Cage and Josephine Muldrow. Both motions are opposed by the Secretary.

In this Memorandum the Court explains its orders resolving the outstanding motions. Section B of Part I deals with the procedural aspects of the Court's decision to enter summary judgment for plaintiffs. Part II treats the motions for class certification and intervention as to three interve-

nors. Part III sets out conclusions as to jurisdiction and mootness. Part IV addresses the substantive issue of entitlement to declaratory and equitable relief which this case presents.

### B. *Disposition*

 The Court has treated plaintiffs' motion for reconsideration and clarification of the denial of a preliminary injunction and its opposition to defendant's motion to dismiss as a motion for summary judgment and has entered judgment and granted declaratory relief for plaintiffs. The Court's entry of judgment at this stage of the proceedings is based upon a number of considerations and authorities. First, it is clear that in this Circuit oral argument on a motion for summary judgment is not required before entry of that judgment, *Spark v. Catholic University,* 167 U.S.App. D.C. 56, 59, 510 F.2d 1277, 1280 (1975); 6 Moore's *Federal Practice* at ¶ 56.14(1) (1978); Local Rule 1–9(c). Secondly, both F.R.Civ.P. 56(b) and case law support the Court's treatment of a motion to dismiss as a motion for summary judgment where matters outside the pleadings are presented and considered by the Court; *Carter v. Stanton,* 405 U.S. 669, 92 S.Ct. 1232, 31 L.Ed.2d 569 (1972); *Fagan v. National Cash Register,* 157 U.S.App.D.C. 15, 26, 481 F.2d 1115, 1126 (1973); *Tuley v. Heyd,* 482 F.2d 590, 592–93 (5th Cir. 1973). And finally under the proper circumstances where the parties have had full opportunity to present the issues and to contest the proposition that there exist no facts in dispute material to entry of judgment, the Court may enter judgment for a party which has not *in haec verba* moved for summary judgment; *Morrisey v. Curran,* 423 F.2d 393, 398 (2d Cir. 1970); *Petroleo Brasileio S. A. v. American Oil Corp.,* 372 F.Supp. 503, 508 (S.D.N.Y. 1974); *United States v. Cless,* 150 F.Supp. 687 (M.D.Pa.1957) (on plaintiff's motion for judgment on pleadings, court enters summary judgment for defendant); *see Abrams v. Occidental Petroleum Corp.,* 450 F.2d 157, 165–66 (2d Cir. 1971), *aff'd sub nom. Kern County Land Corp. v. Occidental Petroleum Corp.,* 411 U.S. 582, 93 S.Ct.

1736, 36 L.Ed.2d 503 (1973); 6 Moore's *Federal Practice* at ¶ 56.12 (1978). As Professor Moore notes in his treatise (quoting in the first paragraph from his first edition):

> If either the proponent of the claim or the defending party moves for a summary judgment, and the court finds that the moving party is not entitled thereto, but that the other party is so entitled, it would seem that the court has the power to enter the proper judgment, although a cross-motion therefor was not made. Rule 54(e) gives the court the power to enter the final judgment to which the prevailing party is entitled, even if the party has not demanded such relief in his pleadings, except in default judgment cases. The theory is that the form of the pleadings should not place a limitation upon the power of the court to do justice. So where one party has invoked the power of the court to render a summary judgment against his adversary, it is reasonable that this invocation gives the court power to render a summary judgment for his adversary if it is clear that the case warrants that result.

There is some authority *contra,* which only leads to the ceremony of a formal motion by the party so entitled. The great weight of authority, however, dispenses with the formality of a cross-motion and supports the above position of the Treatise. (At 56–331–56–332) (footnotes omitted).

 This case plainly presents circumstances in which such a procedure is in order. The Secretary has had a full and more than fair opportunity to contest, and has contested, every element of plaintiff's allegations in a variety of pleadings. The parties vigorously contested the motions for a temporary restraining order and a preliminary injunction. Plaintiff's Motion for Reconsideration and Clarification of the Denial of a Preliminary Injunction presented another opportunity for defendant to contest the case. Defendant filed an extensive memorandum in support of its Motion to Dismiss and a supplemental memorandum,

supported by five exhibits. The parties further contested the Motion for Class Certification and two motions for intervention, with defendant filing a supplemental memorandum with respect to the former. The supplemental reports requested by the Court to provide information about named parties and intervenors and about the status of two relevant cases were employed by defendant as additional opportunities to raise substantive issues by incorporating his motion for rehearing en banc filed in the Sixth Circuit case of *Blankenship v. Secretary of Health, Education and Welfare*, 587 F.2d 329 (6th Cir. 1978). In addition, the Court has before it numerous affidavits and exhibits, filed by both parties in contesting various motions, and statistics relating to delays in decision-making revealed by plaintiff's interrogatories.[1] Moreover, the issue here turns on a finite number of facts which are fully admitted by defendant in his interrogatories, so that a 9(h) statement, which relates to facts and not legal issues, could not materially assist either the Court or the parties. Thus, since the record in this case goes far beyond the pleadings, the Court concludes that treatment of the motion to dismiss as one for summary judgment is quite in order here.

■ As to the entry of summary judgment for plaintiffs, the rationale for refusing to grant a judgment to a nonmoving party is that the moving party may not have had full opportunity to contest such adverse decision. When a party moves for dismissal on the pleadings or summary judgment, in theory he may present an offensive argument without the necessity of protecting his defense. Here, however,

---

1. The Court agrees with defendant that resolution of defendant's motion to compel adversely to defendant renders all other outstanding motions ripe. Transcript of Proceedings of January 5, 1979 at 12. As a threshold matter, therefore, the Court has considered that motion to compel, plaintiffs' objections to interrogatories and the potential relevancy of the interrogatories to the other motions. Upon consideration of the interrogatories, both answered and unanswered, the above-mentioned motions, and memoranda and supplementary memoranda in support and opposition, the Court concludes that plaintiffs' objections are well taken. The interrogatories to which plaintiffs object are in general unduly burdensome, deal with material far more easily obtainable by the Secretary, and in part would interfere with the attorney-client privilege. Most importantly, many of the interrogatories seek information which is now irrelevant in light of the Court's determination that the source of delay in or the mootness of the case of any additional claimants in no way affects the validity of the class's certification or its entitlement to relief. Therefore, the Court denies defendant's motions to compel.

Explicit in the Secretary's arguments and implicit in the interrogatories the Secretary propounds is the theory that plaintiffs may be entitled to no relief because, on the whole, the delays at issue may be caused by the claimants themselves. "There has been no proof entered by plaintiffs of why a certain number of days pass and on whom the blame for the passage of time must fall." Motion for a Stay of Judgment at 4, n. 4; Defendant's Opposition to Plaintiffs' Motion for Reconsideration and Clarification at 7. Such a proposition might be confirmed, arguably, if discovery could be had against the class or against a sufficient sample of the class.

At the threshold it can be noted that the "sample" sought—claimants which counsel for plaintiff knows of—bears no resemblance to a random sample. But the argument must be rejected on broader grounds. First, the Secretary is estopped from advancing such an argument by his admissions elsewhere that the delay problem is nationwide in scope, and that the delays, whether the fault of the Secretary or of Congress, are not attributable to claimants; *Wright v. Califano, infra* at 353; Delays in Social Security Appeals: Hearings Before the Subcomm. on Social Security of the House Comm. on Ways and Means, 94th Cong., 1st Sess. (1975). Secondly, the Court having concluded *supra* at 17, 19 that at least 120 days of delay was suffered by each plaintiff and three proposed intervenors, it follows that the class is not a null set and that some members are entitled to relief. *Compare Health Research Group v. Kennedy*, (D.D.C.1979) 82 F.R.D. 21. The appropriate way to deal with claimant-caused delay is in the formulation of the remedy, e. g., *Caswell v. Califano, infra*, 435 F.Supp. at 136; *Barnett v. Califano, infra* at 30, n. 7, and not in either total denial of a remedy or redefinition of the class, see n. 9. And the Secretary, with nationwide experience and data on all claimants, is the appropriate party to take the initiative in dealing with the problem of such delays; he is afforded that opportunity in this action, *infra* at 25–28.

Remaining outstanding also is the motion to proceed *in forma pauperis*. The Court finds more than adequate support in the affidavits for granting that motion.

the government's vigorous defense against plaintiffs' motion for reconsideration of the denial of a preliminary injunction fully developed the issues (already treated fully in the Secretary's defense of parallel suits against him in four other circuits); the Court grants nothing by its entry of summary judgment which could not have been accomplished in granting the plaintiffs' renewed motion for preliminary injunction.

■ Legal as well as factual issues are thus fully presented in the papers. Moreover, this case represents the local manifestation of a nationwide problem which has been treated thoroughly in other jurisdictions.[2] As to both legal and factual issues, the Court has compared the information now available to it with the information set forth as the basis for decisions in those companion cases cited above of which it takes judicial notice. The defendant's careful opposition here and in the parallel cases makes it inconceivable that there exists any point which the Secretary could raise which he has not already raised here at least once. Nor does the motion for stay of judgment proffer any additional point which has been omitted or slighted throughout the course of this litigation. Under these circumstances the Court will not elevate form over substance and delay further the judgment to which plaintiffs are entitled.

## II. Jurisdiction

### A. 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3)

■ The Secretary contends that 42 U.S.C. § 405(h) bars jurisdiction pursuant to 405(g) and 1383(c)(3).[3] As in every court which has considered the issue, that contention is rejected here.

Section 405(g) provides in part that

Any individual, after any final decision of the Secretary made after a hearing to which he was a party, . . . may obtain a review of such decision by a civil action . . . ..

Section 405(h) provides in part that

No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or government agency except as herein provided. No action against . . . the Secretary . . shall be brought under [28 U.S.C. 1331 et seq.] to recover on any claim arising under this subchapter.

In *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), a Title II recipient brought a constitutional challenge to the Social Security Administration's assessment procedures, without first having exhausted his administrative remedies. The Supreme Court found jurisdiction pursuant to 405(g). The Court noted that *Weinberger v. Salfi*, 422 U.S. 749, 755–56, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975) had held that 405(h) precluded federal question jurisdiction over actions challenging the denial of benefits, making 405(g) the exclusive basis for review. It went on to note:

Implicit in *Salfi*, however, is the principle that this condition [a final decision after a hearing] consists of two elements, only one of which is purely 'jurisdictional' in the sense that it cannot be 'waived' by the Secretary in a particular case. The waivable element is the requirement that

2. *Wright v. Califano*, 587 F.2d 345 (7th Cir. 1978); *Blankenship v. Secretary of Health, Education and Welfare*, 587 F.2d 329 (6th Cir. 1978); *Caswell v. Califano*, 583 F.2d 9 (1st Cir. 1978), aff'g. 435 F. Supp. 127 (D.Me.1977); *Barnett v. Califano*, 580 F.2d 28 (2d Cir. 1978); *White v. Mathews*, 559 F.2d 852 (2d Cir. 1977), cert. denied, 435 U.S. 908, 98 S.Ct. 1458, 55 L.Ed.2d 500 (1978); *Etier v. Califano*, Civ. No. C–77–0520–WHO (N.D.Cal.) (Orders of August 19, 1977, February 8, 1978); *Martinez v. Califano*, Civ. Ac. No. 73–C–900 (E.D.N.Y., January 3, 1979).

3. The provisions of 405(g) and (h) are incorporated into Title XVI of the Act by 42 U.S.C. § 1383(c)(3) which provides that:

The final determination of the Secretary after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Secretary's final determinations under section 405 of this title; except that the determination of the Secretary after such hearing as to any fact shall be final and conclusive and not subject to review by any court.

The discussion with respect to 405 therefore applies also to 1383(c)(3).

the administrative remedies prescribed by the Secretary be exhausted. The non-waivable element is the requirement that a claim for benefits shall have been presented to the Secretary. Absent such a claim there can be no "decision" of any type. And some decision by the Secretary is clearly required by the statute. 424 U.S. at 328, 96 S.Ct. at 899.

The Court suggested that even if the Secretary did not voluntarily waive the former element, the Court itself could independently determine whether an issue was sufficiently final to warrant review. Such waiver by the court would be appropriate where "a claimant's interest in having the particular issue resolved promptly is so great that deference to the agency's judgment is inappropriate." *Id.* at 330, 96 S.Ct. at 900.

> Decisions in different contexts have emphasized that the nature of the claim being asserted and the consequences of deferment of judicial review are important factors in determining whether a statutory requirement of finality has been satisfied. . . . [C]ertain of the policy considerations implicated in [analogous provisions such as 28 U.S.C. 1257 and 1291] are different from those that are relevant here. . . . But the core principle that statutorily created finality requirements should, if possible, be construed so as not to cause crucial collateral claims to be lost and potentially irreparable injuries to be suffered remains applicable. *Id.* at 331, n. 11, 96 S.Ct. at 901.

Under the circumstances of *Salfi*, the Court found that review was appropriate because the constitutional challenge was entirely collateral to the substantive claim for entitlement and that it was at least arguable that an erroneous termination would cause damage not repairable through retroactive payments. *Id.* at 330–31, 96 S.Ct. 893.

Here plaintiffs do not seek a determination that they are eligible for benefits under Titles II or XVI; they claim that statutes and the Constitution entitle them to a decision within a reasonable time. These claims are obviously collateral to any substantive determination. Thus, finding jurisdiction here in no way undermines the normal requirement of exhaustion of administrative remedies or the role of 405(g) as the exclusive jurisdictional basis for challenges to the merits of benefit determinations under the Act. *Caswell v. Califano*, 583 F.2d at 14, n. 11.

Moreover, effective relief here cannot be afforded by awaiting a final determination. The affidavits reveal and the Court finds that members of the class live at or below the margin of poverty and are in dire financial condition. The Court concludes that deprivation of subsistence support cannot be remedied adequately by larger future payments. *See, e. g. Jones v. Califano*, 576 F.2d 12, 18–22 (2d Cir. 1978); *Lyons v. Weinberger*, 376 F.Supp. 248, 262 (S.D.N.Y. 1974). Moreover, requiring a final determination would deprive plaintiffs of the very right they seek. As the district court noted and the First Circuit repeated in *Caswell v. Califano*, 583 F.2d at 14:

> It would indeed be ironic if the very delay now under attack, which prevents the exhaustion of administrative remedies through no fault of the plaintiffs, constitutes a barrier to this Court's jurisdiction under Section 405(g), (quoting 435 F.Supp. at 133.)

Moreover, awaiting a final decision would be futile, since it is clear that the Secretary has taken a position opposed to any of the relief plaintiffs seek in this and every other case which has presented the issue; *see, e. g.* Petition for Certiorari, *White v. Mathews, supra* at 8–9, quoted in Memorandum in Opposition to Defendant's Motion to Dismiss. And the significance of the delays and the resulting deprivation of benefits is underscored by the fact that a significant, high percentage of adverse decisions are reversed on appeal, *infra* at 1238. The Court therefore concludes that jurisdiction is proper under 42 U.S.C. §§ 405(g) and 1383(c)(3). *Blankenship v. Secretary of HEW, supra; Caswell v. Califano, supra; Jones v. Califano, supra.*

## B. *28 U.S.C. § 1361*

Plaintiffs assert—and the Secretary vigorously denies—that the Court has jurisdiction under the mandamus statute, 28 U.S.C. § 1361, which grants to the district court original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.

Relying as it does on 42 U.S.C. §§ 405(g) and 1383(c)(3), the Court finds it unnecessary to rely on mandamus jurisdiction as well. Suffice it to say here that a number of courts that have found jurisdiction under § 1361 in cases involving the Social Security Act, *e. g. Barnett v. Califano, supra*, at 31; *Elliott v. Weinberger*, 564 F.2d 1219 (9th Cir. 1977); *White v. Mathews*, 559 F.2d at 855–56, 858. For example, in *Frost v. Weinberger*, 515 F.2d 57 (2d Cir. 1975), *cert. den.* 424 U.S. 958, 96 S.Ct. 1435, 47 L.Ed.2d 364 (1976), the Second Circuit per Friendly, J., held that there was mandamus jurisdiction over an action to require the Social Security Administration to provide an evidentiary hearing before terminating survivors' benefits under the Act. *See also Norton v. Mathews*, 427 U.S. 524, 529–30, 96 S.Ct. 2771, 49 L.Ed.2d 672 (1976); *Mathews v. Eldridge, supra*, 424 U.S. at 322, n. 12, 96 S.Ct. 893.

The traditional requirements for mandamus jurisdiction are first, the existence of a clear statutory right in plaintiffs; secondly, the absence of discretion on the part of the government official charged with the correlative duty; and thirdly, inadequacy of any other remedy. Some circuits have expressed doubts whether relief such as requiring the adoption of regulations or imposing a time table upon decisions fits within the traditional limitations of mandamus, *Caswell v. Califano*, 583 F.2d at 13, n. 8. Mandamus jurisdiction has a distinguished ancestry in this circuit, *e. g., Marbury v. Madison*, 1 Cranch 137, 58 U.S. 137, 2 L.Ed. 60 (1803); that lineage today includes the concept that Section 1361 creates an action "in the nature of mandamus", yet free of the "hoary strictures of mandamus law";

*Esquire, Inc. v. Ringer*, 192 U.S.App.D.C. 187, 591 F.2d 796 (1978) (Leventhal, J., concurring).

The reasoning of another recent case, while expressed in dictum, strongly supports mandamus jurisdiction over this action, should invocation of that jurisdiction become necessary. In *Association of American Medical Colleges v. Califano*, 186 U.S. App.D.C. 270, 569 F.2d 101 (1977), the Court of Appeals considered *sua sponte* whether the district court possessed mandamus jurisdiction to challenge regulations fixing limits on Medicare reimbursement for providers of services. The Court concluded that 42 U.S.C. § 405(h), discussed above, barred jurisdiction under any other provision at least "[where] the Act's review procedures do allow judicial consideration of the particular action." The Court found that the Medicare Act, 42 U.S.C. § 1395oo specifically authorized review of the action at issue because the "Provider Reimbursement Review Board" was empowered to grant an "exception" to the regulations if challenged by a claim for full reimbursement; alternatively, the aggrieved party could have presented a reimbursement claim without pursuing an exception and, if the claim were turned down, sought judicial review of the Board's final action. The Court noted by way of contrast:

> We realize that mandamus may become available in limited circumstances not involved here. Had appellant alleged undue delay or plain departure from statutory procedures, perhaps mandamus could have been employed to compel the Secretary to adhere to the requirements of Section 1395oo. Such a result would not interfere with the Board's decisions on the merits of a claim; it would simply insure that consideration of the claim would be properly and indeed, expeditiously afforded.[100] . . . [Here] appellant has not suggested that it was denied reasonably prompt treatment of an exception claim . . . ..

*Id.* 186 U.S.App.D.C. at 282, 568 F.2d at 113.

In footnote 100, the Court of Appeals cited the leading Second Circuit case dealing with delays in Social Security appeals:

*White v. Mathews* [citation omitted] (because district court was asked merely to require the agency to conduct its proceedings with reasonable speed, resort to mandamus leaves § 205(g) undisturbed as the exclusive avenue to judicial review for one seeking to challenge the merits of the denial of benefits under the Social Security Act); cf. *Elliott v. Weinberger* [citation omitted]; *Ryan v. Shea*, 525 F.2d 268, 272.

■ Finally, were the Court obliged to consider the traditional requirements of mandamus, those would appear to be satisfied here. As the Court concludes below, the Act requires a hearing and the Administrative Procedure Act imposes a clear duty on the Secretary not to permit unreasonable delay from its administrative action, 5 U.S.C. §§ 555(b), 706(1). The Secretary then has no discretion to delay beyond a reasonable period or to deny plaintiffs their statutory and constitutional rights; his duty is in that sense mandatory. His expertise may entitle him to a role in determining *how* to get from here to there, but he must proceed and get there in a reasonable time. Nor is another adequate remedy available. Pursuit of the individual benefit claims is, for the reasons discussed above, of no avail in resolving the plaintiffs' claim as to administrative delay.

While not relying thereon, the Court therefore concludes that, in addition to the jurisdiction found under Part A, *supra*, it has jurisdiction of this action under 28 U.S.C. § 1361; *White v. Mathews, supra* at 855–56; *Caswell v. Califano*, 435 F.Supp. at 132–33; *see Asso. of Am. Medical Colleges v. Califano*, 186 U.S.App.D.C. 270, 282–283, 569 F.2d 101, 113–14 (1977).[4]

---

4. In light of its findings with respect to 42 U.S.C. § 405(g), 42 U.S.C. § 1383(c)(3) and 28 U.S.C. § 1361, the Court need not reach the question of jurisdiction pursuant to 28 U.S.C. § 1331. *See Caswell v. Califano*, 435 F.Supp. at 135.

5. E. g. "Annually the Social Security Administration issues millions of decisions which are administratively and judicially reviewable . . . the functional treatment is identical for each

## III. Class Certification

Plaintiffs seek certification for a class defined as

residents of the District of Columbia who have filed claims for benefits under . . . the Social Security Act, and who have suffered a delay of 120 days or longer in obtaining a final decision on their appeal from the denial, reduction, termination or suspension of said benefits.

Plaintiffs wish to subdivide the class into four subcategories according to the benefits which were denied, terminated or suspended: (1) disability benefits under Title II; (2) nondisability benefits under Title II; (3) disability benefits under Title XVI; (4) nondisability benefits under Title XVI.

In addition to the four named plaintiffs—Lena Cockrum, Lottie Young, Ouida Davidson and Robert Boyer—a total of five additional individuals have moved for intervention as named plaintiffs in the action.

The Court will consider first the two threshold challenges to certification posed by the Secretary—that 405(h) bars certification and that the case is moot as to named plaintiffs and therefore moot as to the class. It then considers whether the class meets the technical requirements of F.R. Civ.P. 23(a) and (b)(2).

### A. *42 U.S.C. § 405(h)*

Having decided earlier that 42 U.S.C. § 405(h) poses no bar to jurisdiction of this action, the Court concludes that that section is irrelevant to the issue of eligibility for class certification. Defendant's arguments on that point[5] reveal confusion between the issue raised in this litigation and that raised in an action dealing with the evaluation of an individual claim for benefits—a distinc-

claim, each record and each decision relate to an individual . . . . It is illusory to suggest that class actions could materially offset those numbers by reducing the number of civil actions filed. As Congress undoubtedly recognized, most claims are unsuited to class action review since they turn upon the application of specific facts and apply regulations to an individual's unique claim." Memorandum in Opposition to Motion for Class Certification at 7.

tion plainly and easily recognized in the leading cases, *e. g., Blankenship v. Secy. of HEW, supra* at 332; *Wright v. Califano, supra* at 349; *Caswell v. Califano, supra,* 583 F.2d at 14.

 Defendant appears to argue that a class action in this case would interfere with plaintiffs' rights to pursue their claims at their own pace and would force them to accept a judgment in an action they might not seek to pursue: the class action here in some fashion imposes on the Court the burden of adjudication of many claims which "do not in the potential plaintiff's view merit even the modest investment of time involved" to pursue, Memorandum in Opposition to Motion for Class Certification at 10–11. Defendant's arguments are not convincing. The action does not involve the substantive outcome of individual benefit applications, and nowhere is the argument made that a class action would affect the number of those applications or judicial review thereof. The action seeks to require no party to sue for benefits or to seek review, and forces upon no party a substantive judgment he may not desire. The remedy sought, by contrast, would give plaintiffs the ability to obtain a decision more rapidly, but even here it would in no way force an individual to pursue a claim more rapidly than he might otherwise desire. Class certification would not impose improper burdens on the class or on the Court. The Court rejects the contention that certification is improper because of 42 U.S.C. § 405(h) or some emanation therefrom.[6]

### B. *Mootness*

The Secretary has aggressively responded to the factual allegations of each named plaintiff. As final decisions were reached for named plaintiffs, the Secretary has argued that the action has become moot both as to those named plaintiffs and as to the class as a whole.

This tactic of defense may have been encouraged by the Court's original denial of a temporary restraining order and a preliminary injunction in July and August 1978. Those decisions were based in part, however, on what the Court understood to be concessions of plaintiffs and representations of defendant's counsel as to the mootness or near-mootness of the individual claims and about efforts by the Secretary to produce results in those individual cases. In response to those requests for short-term relief for named plaintiffs, the Court attempted an ad hoc approach in an effort to achieve results without undue judicial interference with the administrative process. The Court signalled clearly, however, at that time that those decisions had no implication for the class action issue or for final relief, by specifically reserving the issue of whether denial of preliminary relief required dismissal of the action, quoting *Sosna v. Iowa,* 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975). Memorandum of August 23, 1978. Subsequent development of the case has confirmed that individual plaintiffs may be entitled to short-term relief. It has also become clear, however, that the problem plaintiffs complain of is systemic and nationwide in scope, and that a long-run solution, generally inappropriate and premature at a preliminary stage, must be made systemic rather than ad hoc in the final judgment.

In *Sosna v. Iowa, supra,* the Supreme Court stated that "normally" the mootness of the claims of named plaintiffs would be gauged at the time the district court ruled on certification; *O'Shea v. Littleton,* 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974). Under this approach the Court concludes, as set out below, that the action is not moot as to at least three proposed intervenors: Annie Pearl David, Esther Starkey and Azzie Lee Cage. In *Sosna,* however, the Supreme Court also noted that special allowance in dealing with a class action may be necessary for claims which become moot during the pendency of an action:

---

6. The Court finds no support for the Secretary's argument that 405(g) bars a class action for claims which would otherwise be maintain-

able as individual actions. *See Caswell v. Califano,* 583 F.2d at 14–15, n. 12.

There may be cases in which the controversy involving the named plaintiffs is such that it becomes moot as to them before the district court can reasonably be expected to rule on a certification motion. In such instances, whether the certification can be said to "relate back" to the filing of the complaint may depend upon the circumstances of the particular case and especially the reality of the claim that otherwise would evade review. *Id.* 419 U.S. at 402, n. 11, 95 S.Ct. at 559.

### 1. *"Relation Back": Special Circumstances of Sosna*

█ As the class is here defined, each plaintiff has already experienced a delay of at least 120 days in receiving a final decision, measured from plaintiff's request for a hearing. In light of the statistics which reveal delays of 200 days or longer, it is highly likely and to be hoped that many named parties will obtain decisions throughout the pendency of this action. It is also possible—although the Court makes no finding to that effect—that defendant could avoid review of the issues raised in this action by giving special attention to the cases of named parties; *see White v. Mathews, supra* at 857.

First, the Court concludes it would be undesirable if the concept of mootness were defined so that unfettered power to control judicial review rested with defendants. This is a consideration, not present in *Sosna,* which warrants looking to the time the action was filed or certification sought in determining mootness.

Secondly, the claim plaintiffs advance epitomises an injury "capable of repetition yet evading review" if the action is mooted whenever named plaintiffs receive a final decision on a particular claim. A plaintiff dependent on Social Security and the efficiency of the system remains threatened by the defects in the system even though his immediate complaint is resolved, because the systemic delays could affect the claimant in the not unlikely event of a subsequent controversy with the system.[7] The Court is persuaded by the Sixth Circuit decision rejecting the government's mootness argument in a case where named plaintiffs had received relief, noting that, as in *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), "refusal to consider a class-wide remedy merely because individual class members no longer need relief would mean that no remedy could ever be provided for the continuing abuses." *Blankenship v. Secretary of Health, Education and Welfare, supra* at 333; *see also Lyons v. Weinberger,* 376 F.Supp. 248, 257–58, 263–64 (S.D.N.Y.1974). Similar reasoning has been applied by the Supreme Court in *Roe v. Wade,* 410 U.S. 113, 125, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), *Carroll v. Commissioners of Princess Anne County,* 393 U.S. 175, 89 S.Ct. 347, 21 L.Ed.2d 325 (1968) and *Moore v. Ogilvie,* 344 U.S. 814, 89 S.Ct. 1493, 23 L.Ed.2d 1 (1969). See the thorough discussion of the issue in *Frost v. Weinberger, supra* at 62–65 (Friendly, J.).

Thirdly, again as in *Sosna,* the action is not moot as between members of the plaintiff class and defendants.

Fourthly, in contrast to the constitutional requirement of a live controversy between defendant and some plaintiff, named or class member, the reason for generally requiring non-mootness as to the named plaintiff is that otherwise there is no assurance that the named party will adequately represent the class. This has no application where, as here, the Court has postponed resolution of the certification issue until its ruling on the merits, after vigorous presentations by both sides. *See Frost v. Weinberger, supra* at 64.

Finally, the claim which would otherwise evade review is a vital one involving the means of support for many poor, elderly and disabled individuals. The significance and nationwide scope of the problem has been recognized in at least three circuits and needs no further elaboration here. For

---

7. The Court does not decide whether such threat is sufficient to provide standing. *See* n. 10, *infra.*

these reasons, the Court concludes that certification should "relate back" to the filing of the complaint (or perhaps more properly the time when class certification was formally requested, July 6, 1978) in determining mootness; *White v. Mathews, supra* at 857; *Wright v. Califano, supra* at 350.

It is uncontested by the Secretary, and the Court finds that as of July 6, 1978, all named plaintiffs had experienced delays of well over 120 days since the time they had requested a hearing and had not yet received final decisions. That fact is confirmed by the following chart compiled from the affidavits:

| Named Plaintiff | Date of Hearing Request | Date of Decision from ALJ | Time Elapsed |
|---|---|---|---|
| Lena Cockrum | 6–28–77 | 12– 8–78 (unf.) | 17 mos. |
| Ouida Davidson | 5– 4–77 | 1–23–79 (fav.) | 20 mos. |
| Lottie Young | 9– 1–77 | 7–13–78 (fav.) | 10 mos. |
| Robert Boyer | 7–12–77 | 7–14–78 (unf.) | 12 mos. |

It is also clear from an examination of the affidavits and the Court finds that the named plaintiffs have suffered delays not attributable to their own conduct of, at the very least, 120 days.

The Court therefore concludes that the action is not moot.

2. *Current Viability: The "Normal" Rule of Sosna*

 Even if the circumstances did not justify relation back of the certification, under the "normal" rule at *Sosna*, live controversies continue to exist between the Secretary and intervenors David, Starkey and Cage.[8] A brief review of the cases of those individuals will underscore that conclusion.

Annie Pearl David was receiving Disability Insurance benefits and Supplemental Security Income (SSI) when she received a "cessation of benefits" letter on February 10, 1978. After an apparent denial of reconsideration, she applied for a hearing on April 28, 1978. A hearing was held on September 26, about 150 days later. Her counsel requested that the record be kept open pending submission of additional evidence. On October 27, the Administrative Law Judge (ALJ) requested that a psychiatric examination be conducted. The report of the examiner was received on December 13. Determining that another written opinion from a medical advisor was needed, the ALJ requested one on January 10, 1979. The ALJ was dissatisfied with the credentials of the medical advisor, and requested another opinion on January 29. (Aff. of Annie Pearl David, filed September 26, 1978; aff. of ALJ Phillip Brown, filed December 11, 1978; Defendant's Report to the Court, filed February 12, 1979; Plaintiff's Memorandum Re. Current Status, filed February 12, 1979; Plaintiff's Response to Defendant's Report of February 12, 1979, filed February 6, 1979).[9]

Esther Starkey is a 67-year old widow of a common law marriage. She applied for widows benefits on March 8, 1977. After an original denial, her application was de-

---

**8.** Proposed intervenor Michael Wasilow appears to have received a decision from an ALJ in part favorable and in part unfavorable, in December 1978, and thus would appear to be in the same category as the named plaintiffs. While the Court has not concluded that the action is necessarily moot as to the original named plaintiffs, *supra* n. 7, it sees no advantages to his intervention as a named party at this time and thus continues the motion under advisement as to him. Proposed intervenor Josephine Muldrow presents a quite complex case which, in light of the presence of plaintiffs David, Starkey and Cage, the Court need not at present analyze; the motion as to her is continued under advisement.

**9.** Defendant argues that David's application to intervene should be denied because she asks the Court to act during the "very process of adjudicating, where the administrative law judge has been pursuing a line of inquiry deemed pertinent . . ." citing dicta in *Niagara Mohawk Power Co. v. FPC*, 126 U.S.App. D.C. 376, 383, 379 F.2d 153, 160 (1967), *United States v. Morgan*, 313 U.S. 409, 422, 61 S.Ct. 999, 85 L.Ed. 1429 (1941). Defendant's Additional Memorandum of Pending Motions, filed February 27, 1979. This last gasp argument would suggest that no reasonable time period for decision could be defined so long as the adjudicator was pursuing "pertinent" inquiries. If such a qualitative evaluation of the cause of delay is required, the Court would think that fairness would compel the Secretary to account also for the 150-day delay from April 28 until the hearing on September 26.

nied upon reconsideration on April 27, 1978. She requested a hearing on June 1. At the close of the hearing on October 17, 1978, the ALJ indicated that he wished to keep open the record in order to obtain certain IRS tax returns. On November 21, Mrs. Starkey executed the IRS form which had been provided by the ALJ's law clerk to enable the ALJ to obtain the returns from the IRS. On February 2, 1979, the ALJ's clerk told counsel for Mrs. Starkey that the IRS required additional authorization from the administrator of Mr. Starkey's estate. Counsel informed the clerk that Mr. Starkey had died intestate. On February 5, the clerk sent Mrs. Starkey's counsel a revised IRS form again requiring her signature. (Affidavit of Esther Starkey, filed September 26, 1978; affidavit of Thomas Hylden, counsel for Mrs. Starkey, filed February 12, 1979).

Mrs. Starkey, like Mrs. David, suffered a delay of more than 120 days in receiving a hearing before an ALJ. Delay after the hearing requires a closer analysis. As far as the Court can determine the request for further tax information was made by the ALJ, although the applicant did not oppose the request. Seeking the additional evidence requested here may well constitute appropriate action on the part of the ALJ, so that some reasonable period of delay thereafter should not be charged against defendant. And the affidavits do not reveal whether the delay from October 17 to November 21 was the result of the applicant's delaying in signing the first release or of the ALJ's delay in sending applicant the release to sign. The facts suggest that all or a large portion of the subsequent delay until February 1979 cannot be laid upon the claimant.

Intervenor Azzie Lee Cage is a 75-year old woman who receives $169.40 in combined SSI and Social Security benefits; her monthly expenses total about $171. About September 30, 1976, she received a "notice of overpayment action." After a determination that some overpayment had occurred, her counsel requested a hearing on October 23, 1978. Much of the delay between 1976 and 1978, as the Secretary correctly points out, was not due to the Secretary's action. Some of the correspondence which was sent to Cage during that period had inadvertently been diverted by her landlady who was at the time 87 years old and blind; none of that period is germane to this action, however, which relates only to the period beginning with Cage's request for a hearing in October 1978. A hearing was set for February 27, 1979; at the request of counsel for Mrs. Cage it was postponed until March 1. (Aff. of Cage, filed January 30, 1979; aff. of William C. Taylor, filed February 27, 1979.) Assuming that the hearing occurred on March 1, and subtracting the delay caused by the request of counsel, more than 120 days elapsed before the hearing took place, a fortiori more than 120 days will elapse before Cage receives a final decision.

As the foregoing facts reveal, live controversies currently exist between the Secretary and the above three individuals. Moreover, it is also clear, and the Court finds that each of the above claimants has suffered delays not attributable to her conduct of at least 120 days. Granting their motions for intervention the Court concludes that the action is not moot.[10]

10. Arguably the action is not mooted as to named plaintiffs who have received a decision. Plaintiffs present a stronger and specific argument of this type as to plaintiff Young, Memorandum In Support of the Motion for Reconsideration and Clarification of the Order Denying a Preliminary Injunction at 3, n. 4. Such an argument might be made for all Social Security beneficiaries; a similar if somewhat weaker case might be made for individuals who are or may become eligible for Social Security in the future.

The Court notes the large number of affected individuals under such a theory. In 1975, there were 46,995 retired workers receiving title II benefits in the District, 7,692 disabled workers receiving title II benefits and 15,743 individuals receiving title XVI benefits. Social Security Bulletin, Statistical Supplement 1975, tables 128, 129 and 157, cited in Memorandum in Support of Defendant's Motion for a Protective Order Against Discovery at 4, n. 3 (filed August 4, 1978).

In light of the presence of plaintiffs Starkey, David and Cage who have not received deci-

## C. F.R.Civ.P. 23(a) and (b)(2)

These individual cases serve also to illustrate the predominance of common issues of law and fact over issues which are not common. The class as defined unites people with the factual similarity of suffering delays of 120 days or longer in receiving a decision on their appeals from the denial, termination, etc. of benefits under Titles II and XVI of the Act. The common legal issue is whether defendants have breached a duty to render decisions within a reasonable time.[11]

An examination of the affidavits relating to the named plaintiffs and intervenors, combined with the statistics relating to the average decision time within the District, the region and nationwide reveal that the named parties are representative of the class as a whole. This conclusion is further supported by taking judicial notice of delay statistics in the related cases, *supra* n. 2 and the findings of typicality of named plaintiffs in those cases. And they also fairly and adequately protect the rights of the class. All class members share a common interest in prompt decisions on their appeals; plaintiffs seek to advance that interest. Where, as here, the Court has postponed resolution of the class certification until resolution of most of the substantive issues, the Court can conclude that the papers and arguments of plaintiffs' counsel have already revealed counsel's expertise and competence in pursuing the interest of the class. Finally, the Court concludes that the class is far too numerous to permit joinder of all parties. Thus the requirements of F.R.Civ.P. 23(a) are clearly met.

F.R.Civ.P. 23(b)(2) further requires for qualification that the "party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole . . . ." Both the statistics relating to delays and the patterns evident from the affidavits of named parties reveal that the Secretary's conduct is taken against the class as a whole. Relief for the entire class is appropriate; moreover, individual relief would raise grave problems for defendant if, for example, one court imposed one time schedule for arriving at decisions, another court imposed a different schedule and still a third court required the Secretary to adopt regulations.[12, 13] Plaintiffs thus satisfy the requirements of (b)(2) (and of (b)(1)(A) as well.)

## IV. Substantive Claims

### A. Introduction and Findings of Fact

A brief review of the administrative procedures relating to claims under Titles II

---

sions from ALJ, and in light of the Court's alternative conclusion that mootness may be measured as of July 1978, *supra* at 13, the Court need not resolve any version of this contention.

**11.** The Court is aware that some members of the class have suffered delays of much longer than 120 days, and that some members of the class may have caused part of the delay they have experienced. As to the second possibility, the class might in theory be defined to exclude individuals who have caused delays; then relief need not be so limited. In that case, however, it would still be necessary to consider the cause of any delay; that consideration would occur at the stage of qualification for class membership in the class, rather than qualification for relief as members of the class. Here common questions of fact and law unite the putative class. Named plaintiffs here have suffered unreasonable delays not of their own fault; those plaintiffs, like the named plaintiffs in Wright, Caswell, Blankenship, White and Barnett are typical of the class. The "interests" the class (as broadly defined) asserts are "arguably within the zone of interests" protected by the statutes under which they sue. *Asso. of Data Processors v. Camp*, 397 U.S. 150, 153, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970). Resolution of the class certification issue should not require a resolution of the merits or a final determination of which members of the class are entitled to relief. Rather the remedy will be designed to deny relief where the claimant is the source of delay.

**12.** The Court notes the First Circuit's disposition of the Secretary's opposition to class certification in *Caswell v. Califano*, 583 F.2d at 15, n. 12.

**13.** At present the Court sees no necessity for formally subdividing the class into the four subclasses plaintiffs propose. Such subdivision is not a prerequisite to particular relief for subclasses, if such proves to be necessary.

and XVI of the Act will provide the background for consideration of plaintiff class's substantive claims. If a claimant under either title is dissatisfied with a determination affecting his benefits, he may obtain an evidentiary hearing before an Administrative Law Judge, 20 C.F.R. 404.917, 416.-1425 (1978). If still dissatisfied with the decision of the ALJ, the claimant may request review by the Appeals Council, 20 C.F.R. 404.945, 416.146 (1978). On its own motion the Council may review the decision of an ALJ within sixty days of that decision, 20 C.F.R. 404.947, 416.1463 (1978). A decision of an ALJ which is unfavorable to a claimant is generally not considered a final decision for the purposes of judicial review until the Council has either rendered a decision or denied a request for review. A favorable decision is considered final after the Council has rendered a decision or the time period for its *sua sponte* review has passed. Action suspending or reducing benefits is not stayed pending an appeal to an ALJ, except in the case of disability benefits under Title XVI, where the issue is the continued disability of the claimant.

Applicable to Title II benefits, 42 U.S.C. § 405(b) provides in relevant part:

The Secretary is directed to make findings of fact, and decisions as to the rights of any individual applying for a payment under this subchapter. Upon request by any such individual . . . who makes a showing in writing that his or her rights may be prejudiced by any decision the Secretary has rendered, he shall give such applica[tion] . . . reasonable notice and opportunity for a hearing with respect to such decision, and, if a hearing is held, shall, on the basis of evidence adduced at the hearing, affirm, modify, or reverse his findings of fact and such decision.

Applicable to Title XVI, 42 U.S.C. § 1383(c)(1) and (2) provide that

The Secretary shall provide reasonable notice and opportunity for a hearing to any individual who is or claims to be an eligible individual . . . and is in disagreement with any determination under this title with respect to eligibility . . . or the amount of such individual's benefits . . .

. . . . .

Determination on the basis of such hearing, except to the extent the matter in disagreement involves a disability . . shall be made within ninety days after the individual requests the hearing . .

Relevant to claims under either title, the Administrative Procedure Act provides at 5 U.S.C. §§ 555(b) and 706(1) that

. . . [w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude the matter presented to it.

. . . . .

[a reviewing court shall] (1) compel agency action unlawfully withheld or unreasonably delayed . . . . .

Before turning to the evidence of delays within the District of Columbia, the Court has already noticed judicially the fact that the problem of delays in arriving at decisions on appeals in Social Security benefit cases is nationwide in scope, as officially evidenced by the decisions of three Courts of Appeal and a number of district courts ordering relief of some sort to deal with the problem. Delays have persisted for a number of years; *Caswell v. Califano*, 583 F.2d at 12; and requests for hearings have substantially increased in recent years, owing, as the Secretary has admitted in other cases, to a large increase in claims filed under the Federal Coal Mine Health and Safety Act of 1969, 30 U.S.C. § 901 et seq., and under Title XVI, 42 U.S.C. § 1381 et seq., increasing the workload of the ALJs and creating a large backlog of cases; *Wright v. Califano, supra* at 353; *Caswell v. Califano, supra* at 12. These delays have received Congressional attention and led to legislation authorizing an increase in the number of ALJs P.L. 95–216, sec. 371, 91 Stat. 1509, and giving the Social Security Administration greater flexibility in the use of its personnel, P.L. 94–202, 42 U.S.C.

§ 1383 (1977). During Congressional hearings in 1976, the Commissioner expressed hope that the backlog would be brought under control and that hearings before ALJs could be scheduled within 90 days of a request by July 1977; Hearing bef. the Subcomm. on Social Security of the House Comm. on Ways and Means, 1st Sess. 74 (1975), quoted in *Caswell v. Califano* at 12.[14]

The undisputed facts in the case before the Court reveal that that goal has not been met within the District of Columbia or within HEW Region III which includes the District. The facts related above about the original four named parties reveal delays ranging from 12 to 20 months in obtaining a decision from an ALJ; the facts relating to intervenors David, Starkey and Cage reveal delays not attributable to claimants, of well over 120 days in obtaining a hearing.

Discovery has produced evidence that those delays characterize the current situation of Title II and XVI claimants within the District. Nationally the average time from a request for a hearing to disposition of the matter by an Administrative Law Judge was 205 days in Fiscal Year (FY) 1977 and 169 days in FY 1978. In Region III, the average time was 221 days in FY 1977 and 196 in FY 1978. Within the District of Columbia, the average time for the two offices here were 264 and 316 in FY 1977.

For Title II disability claims, Washington, D.C. quarterly figures from October 1, 1977 through September 30, 1978 reveal average delays ranging from 154 to 234 days. For Title II nondisability, D.C. quarterly figures for the same period reveal delays ranging from 229 to 316 days. Figures for the same period for what defendant entitles "Title II/Title XVI/Title II Disability only" reveal delays ranging from 154 to 233 days.[15] These statistics also reveal that delays experienced within this jurisdiction are worse than the national average and worse than the average for Region III.[16] The significance of the delays is underscored by the high percentage of favorable decisions returned by ALJs, overturning earlier unfavorable decisions.[17]

## B. Conclusions of Law

▌ The Court concludes that the delays experienced by named parties and intervenors and by some members of the class are unreasonable and violate both the Social Security Act, 42 U.S.C. §§ 405(b) and 1383(c) and the Administrative Procedure Act, 5 U.S.C. §§ 555(b) and 706(1). *Blankenship v. Secretary of Health, Education and Welfare, supra; Caswell v. Califano, supra; Barnett v. Califano, supra; White v. Mathews, supra.*

The language of the Act quoted above mandates that the Secretary shall provide a claimant with "reasonable . . . opportunity for a hearing"; the APA requires that agency action be taken "within a reasonable time", 5 U.S.C. § 555(b), and as to one category of Title XVI claims, the Social Security Act itself requires a determination within ninety days after a hearing, 42 U.S.C. § 1383(c)(3).

14. While the Secretary may have repudiated that goal, *Wright v. Califano, supra* at 353, n. 13, he cannot repudiate his duty to render decisions within a reasonable time; such a goal is some evidence of his view of a reasonable time, if not a readily achievable time.

15. Defendant's Responses to Plaintiffs' Interrogatories, Questions 3, 4 and 34; Defendants' Supplementary Response (same questions). The interrogatories sought statistics relating to delays, divided by the four categories of Title II and XVI applications for disability and nondisability claims for the years 1974 to 1978. Defendant replied that it has not broken down all figures by programs. As to the foregoing statistics which do not refer to any particular program, the Court infers from plaintiff's use thereof that they reflect all Title II and XVI applications but no other programs. The Court invites clarification of this point.

16. The Court finds that, with only 12 cases in total, statistics for Title XVI nondisability cases, revealing delays of 107 to 205 days, are not meaningful in light of the small sample.

17. As in other cases, statistics here reveal favorable decisions from ALJs, within the District of Columbia and Region III, for SSI and title II claimants which vary greatly but which exceed 50% in many years. Defendant's Answers to Plaintiffs' First Set of Interrogatories, 9, 12, 43, 46.

The Court finds that the absence of a mandatory time limit for all but the foregoing provision does not negate the Secretary's duty to provide a hearing within a "reasonable" time. *Barnett v. Mathews, supra* at 31; *Caswell v. Califano,* 435 F.Supp. at 134.

Nor can the Court agree with the Seventh Circuit in *Wright v. Califano* that the term "reasonable time" can only be determined by HEW. While HEW, like the school board in a desegregation case, should in the first instance be responsible for defining compliance with its statutory and constitutional duties, the courts are given jurisdiction by Congress in order to provide an ultimate safeguard for such compliance. Avoidance of that role would neglect the Court's duty under the APA, 5 U.S.C. § 706(1), which provides that on judicial review a court "shall compel agency action unlawfully withheld or unreasonably delayed." Both under those powers granted by the APA and under general equitable powers, the Court has the authority and responsibility to insure that statutory rights are not denied through agency delay or inaction; *Nader v. FCC,* 172 U.S.App.D.C. 1, 520 F.2d 182 (1975); *Environmental Defense Fund v. Hardin,* 138 U.S.App.D.C. 391, 428 F.2d 1093 (1970); *Deering Milliken, Inc. v. Johnston,* 295 F.2d 856 (4th Cir. 1971). As found above, many members of the class are disabled, aged or infirm and the benefits at issue constitute the principal means of subsistence for many. Delays in determinations of the lengths which are evidenced here amount to effective denial of benefits and inflict grave and irreparable harms upon plaintiffs.

It would be ironic if the statutory scheme which contemplated judicial review of adverse decisions in individual cases, would prevent a review of the equivalent of adverse decisions suffered by an entire class. At a time where a large and growing segment of the population depends upon Congressionally-mandated payments for support and subsistence, the Court cannot endorse a strained interpretation which would insulate from review and remedy systematic failure of the system to resolve disputes about entitlement to payments within a reasonable time.

Nor can the Court accept the reasoning of *Wright* that the source of the delays lies in an increased caseload due to new legislation and ultimately in Congress's failure to appropriate sufficient funds. There is no evidence that the processing is now done as efficiently as possible, nor that HEW is unable to rearrange priorities or reallocate resources. If the problem ultimately proves to be primarily one of funding, the defendant has a budget and advocacy responsibility which may be subject to judicial oversight. These considerations go to the form of relief, not to the issue of entitlement to relief.

Similarly, the Court recognizes defendant's concern that many benefit claims involve complex issues, that there are many sources of delay and that other courts have taken varying and inconsistent action in responding to the problem. The Court's order emphasizes the necessity that the remedy ultimately adopted be fully consistent with defendant's efforts to comply with the orders of the several other courts which are proceeding parallel to this one. These considerations likewise go to the nature of equitable relief and in no way diminish the Court's duty to grant the declaratory relief plaintiffs seek.

## C. *Remedy*

### 1. *Limitations*

Plaintiffs define their class as individuals who have suffered delays of more than 120 days from the time of their request for a hearing to the time of final decision, including action or inaction by the Appeals Council. The Court's holding does not necessarily entitle each member of that class to relief. First, the Court's holding is at present limited only to the time period between the request for a hearing and the decision by the ALJ. Secondly, the Court holds that the *average* time, as revealed by the statistics, between request and decision is unreasonable and violative of statutory provisions. Thirdly, because the class in-

cludes claimants for four differing types of benefits, the standard for a "reasonable" period for decision-making may vary for each category. The circumstances of each program may also require that any proposed schedule for conforming to this standard vary for each category, and as plaintiffs themselves recognize, the time limits may take into account varying needs for different types of development in different categories of cases; Plaintiffs' Answers to Interrogatories 18 and 19, filed January 8, 1979, at 2, Ans. to Interrog. 19(c).[18] While that time period may well serve as a useful benchmark, the Court does not hold that 120 days necessarily defines the limits of reasonableness. Finally, the class may include members for whom the total time deemed to elapse should be reduced to eliminate periods not relevant to an evaluation of the reasonableness of the Secretary's conduct. These periods may include delays caused by plaintiffs themselves or their counsel or by a request by an ALJ for additional information, at least where such request is reasonable and timely in light of the circumstances.

### 2. Preliminary and Final Equitable Relief

In light of the arguments presented in plaintiffs' motion for reconsideration and clarification of the court's denial of a preliminary injunction, the Court understands plaintiffs as requesting preliminary relief for both individual members and for the class as a whole.

The Court has carefully examined the relief granted by district courts in related cases, as affirmed, modified or reversed by the courts of appeals, and more generally, the problem of judicial relief which affects a complex administrative scheme. It concludes that relief is best afforded by an approach along two distinct avenues. As to the class as a whole, the Court has ordered defendants to submit a plan designed in

good faith as an operational (not an advocate's) device to reduce the time for decisionmaking and ultimately to permit all decisions to be made within a reasonable time.

As noted earlier, the problem of delays in decisionmaking is nationwide, and the Secretary is confronted with a number of different commands from the several courts which have ruled on the matter. HEW possesses the information and expertise to initiate a plan encompassing the relevant variables, to assess the cost of any proposed plan and to decide whether a plan should include a requirement that HEW seek additional funding, e. g. Adams v. Richardson, 356 F.Supp. 92 (D.D.C.), aff'd 156 U.S.App. D.C. 267, 480 F.2d 1159 (1973) (en banc), on remand sub nom. Adams v. Califano, 430 F.Supp. 118 (1977). HEW is best able to develop a plan in harmony with its obligations elsewhere and to achieve a nationwide relief which would comply with all its judicially-imposed obligations. The importance of the foregoing considerations requires that the plan be formulated and approved at the highest levels within HEW. In sum, HEW should have the opportunity of first proposing a remedy to the Court which can then determine whether that plan meets HEW's legal responsibilities to plaintiffs. Such an approach obviates the immediate need for a court-devised plan and time limitation and is in accord with the long-standing judicial deference to administrative expertise. See generally, Note, Judicial Control of Systemic Inadequacies in Federal Administrative Enforcement, 88 Yale L.J. 407 (1978); Project, The Remedial Process in Institutional Reform Litigation, 78 Col. L.R. 784 (1978).

It must be emphasized, however, that the Court's exercise of deference here is based upon its presumption that the responsible HEW officials will act in good faith to carry out the Court's mandate, which presumption will, if necessary, be validated in enforcement proceedings.[19]

---

18. Any plan for rendering decisions for Title XVI nondisability claimants must, of course, provide for rapid compliance with the specific 90-day time limit imposed by statute; 42 U.S.C. § 1383(c)(2).

19. While this litigation has generated an unfortunate amount of acrimony, responsibility cannot be placed solely on one party, see, e. g., Plaintiff's Motion for Reconsideration and Clarification at 2 (filed November 17, 1978), De-

The Court's conclusion that HEW should take the initiative in devising permanent relief for the class does not lessen the Court's obligation to enforce its declaratory judgment for individual claimants with immediate problems, solution of which cannot await the development of a final comprehensive plan. None of the four named plaintiffs requires such attention now, as each has received a decision from an ALJ. The case may be different, however, for intervenors and other members of the class. The Court will entertain motions for preliminary relief from intervenors and other class members for whom a developing plan will not afford a timely and adequate remedy. These applications should identify the duration and the source of delays since a request for a hearing, the financial condition of the claimant and other factors relevant to equitable relief. Such applications should take the form required by F.R.Civ.P. 65 for an application for a preliminary injunction, supported by appropriate affidavits, a memorandum of points and authorities, and a proposed order. The Secretary would respond appropriately if he disputed the source of any delay, was able to present evidence of any efforts to afford relief, or otherwise opposed the motion. The Court

fendant's Response to Plaintiff's Motion for Reconsideration and Clarification at 4, n. 4 (filed December 11, 1978); Defendant's Supplemental Memorandum on Class Certification (filed September 12, 1978); Affidavit of Nathan Dodell, Florence Abrams and A. George Lowe, at 8, 9, n. 1, filed January 18, 1979; Memorandum in Opposition to Defendant's Motion to Compel Discovery at 2, 15, n. 5 (filed January 8, 1979); Defendant's First Supplemental Memorandum at 17 (filed January 18, 1979). The Secretary (who has a higher duty) has advanced some contentions which border on the insubstantial and irrelevant, and others which appear more to delay than to aid the resolution of this action on the merits, despite the human concerns which militate in favor of prompter resolution of individual claims. As another example, plaintiffs sought to represent a class of individuals who have suffered delays in obtaining a final decision from a "denial, reduction, termination or suspension" of benefits. Plaintiff originally presented four named parties who represented the four categories of title II and title XVI disability and nondisability claimants sought to be represented. Defendant argued that, if, e. g., a named plaintiff was appealing a denial of benefits, he would not properly represent individuals who appeal a termination, reduction or suspension of benefits; Memorandum in Opposition to Class Certification at 15–17 (filed July 27, 1978). Defendant argued that if a class is to be certified it should be "limited to the facts and circumstances existing for each named plaintiff." Defendant pursued this argument despite the fact that, as plaintiffs point out, the Secretary has established a common administrative system for all four types of outcome; Memorandum In Reply to Defendant's Opposition to Class Certification at 13 (filed August 16, 1978). While these distinctions may be relevant to a definition of "reasonable time", they are plainly irrelevant as a basis for objecting to the certification of a class.

As another example, plaintiffs initially moved to shorten the time for defendant's response to their interrogatories, in part to enable them to obtain evidence of administrative delays in arguing their motion for preliminary relief. Defendant sought a protective order against any discovery, arguing that discovery should be stayed because defendant intended to raise jurisdictional questions and, in the alternative, opposed a shortening on the ground that plaintiffs could obtain the information they sought pursuant to the Freedom of Information Act and that plaintiffs "failed to exercise diligence in their own efforts." "Plaintiffs' counsel has displayed little more than haste without purpose." Memorandum in Support of Motion for a Protective Order Against Discovery at 6, 7 (filed August 4, 1978). Then, in opposing plaintiff's motion for a preliminary injunction, defendant argued that "plaintiffs' counsel has presented no facts as to any delays being experienced by any one beyond the four named plaintiffs. It is at best an unusual tactic to move for a preliminary injunction for an unnamed class without any showing of alleged administrative delays . . . ." Memorandum in Opposition to Plaintiffs' Motion for a Preliminary Injunction at 3, 4, see 5, n. 4, 6–7 (filed August 10, 1978).

See also the futile argument over numerosity in which the Secretary implied that plaintiffs' counsel had made claims of numerosity with no basis in knowledge or fact, in violation of F.R. Civ.P. 11; Defendant's Supplemental Memorandum on Class Certification (filed September 12, 1978); Affidavit of Nathan Dodell and Florence Abrams and A. George Lowe, at 8, 9, n. 1 (filed January 18, 1979); Memorandum in Opposition to Defendant's Motion to Compel Discovery at 15, n. 5 (filed January 8, 1979). Based on the record, the Court is fully satisfied as to the requirement of numerosity and as to the appropriateness of the representations thereto by plaintiffs' counsel.

expects that this process would permit cooperation between the parties in resolving individual problems, but it would contemplate a remedy imposing a time limit or payment of interim benefits in individual cases where no resolution has been achieved.

Since the Court has concluded that at least some portion of the plaintiff class is entitled to final declaratory relief, plaintiffs' motion for a preliminary injunction has been treated as a motion for a permanent injunction and granted by an Order entered April 12, 1979. To the extent plaintiffs move for equitable relief beyond or in a form different from the comprehensive plan contemplated by this memorandum and order, that motion is taken under advisement pending both development of the permanent plan for equitable relief and any individual motions which may be presented to the Court.